Argued and submitted November 13, 2014, affirmed June 10, 2015

Victoria HAMLIN,
personally and in her capacity as
Personal Representative of the
Estate of Joan E. Hamlin, deceased,
*Plaintiff-Respondent,*
*v.*

Patrick L. HAMLIN,
*Defendant-Appellant,*
*and*

Rinde E. HAMLIN
and Tyler Blackman,
*Defendants.*

Washington County Circuit Court
C115274CV; A153464

352 P3d 737

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs was Jensen & Leiberan.

Matthew Whitman argued the cause and filed the briefs for respondent.

Before Lagesen, Presiding Judge, and Haselton, Chief Judge, and Edmonds, Senior Judge.

LAGESEN, P. J.

## LAGESEN, P. J.

This case arises out of a family dispute regarding the parties' deceased mother's intent in deeding an interest in her house to her son (defendant). The trial court found that, in conveying the interest in the house to defendant, the parties' mother intended defendant to hold the property in trust for the beneficiaries of her will, including her daughter (plaintiff) and defendant. Based on that finding, the trial court entered a judgment that, among other things, declared that defendant held the house as trustee of a resulting trust for the benefit of the beneficiaries of the parties' mother's will.[1] On appeal from that judgment, defendant assigns error to the trial court's finding that the parties' mother intended that defendant would hold the property in trust, arguing that the trial court erred by considering evidence extrinsic to the deed conveying the property to defendant and, in particular, by considering evidence of defendant's conduct after the parties' mother had executed the deed to defendant, in reaching that finding. Defendant further contends that that evidence—even if properly admitted—is insufficient to support the trial court's factual finding that the parties' mother had transferred the property to defendant to hold in trust for the beneficiaries of her will. We affirm, concluding that the trial court permissibly considered evidence extrinsic to the deed, including evidence of defendant's conduct subsequent to the execution of the deed, in determining whether defendant's mother conveyed the property to him to hold in trust.[2] We further conclude that the evidence in the record is sufficient to support the trial court's finding that the parties' mother intended for defendant to hold the property for the benefit of her estate's beneficiaries.

Plaintiff and defendant are sister and brother. After their father died in 2002, plaintiff and the parties' mother, Joan, had numerous conversations about Joan's estate, including the family home and Joan's bank accounts.

---

[1] The beneficiaries of the will were plaintiff, defendant, and two grandchildren.

[2] Plaintiff cross-assigns error to the trial court's exclusion of certain evidence; our rejection of defendant's assignments of error obviates the need to address that cross-assignment.

In those conversations, Joan indicated to plaintiff that she wanted to have the property transfer smoothly to her heirs upon her death outside of the probate process. Joan discussed with plaintiff the necessity of putting one of her children on both the title to the house and the accounts in order to accomplish that goal. Joan first asked if she could put plaintiff's name on both the title and the accounts; however, plaintiff recommended putting defendant's name on the property because defendant, unlike plaintiff, lived in the area. Plaintiff understood that the purpose of putting the house in defendant's name was "ease of transfer" when Joan passed away and that the transfer would occur "according to [Joan's] will."

In September 2005, Joan executed a bargain-and-sale deed, conveying, as grantor, "Lot 55, EMERALD ESTATES, No. 2, Washington County, State of Oregon" to herself and defendant, as grantees. On the title company's "Application for Exemption from Washington County Transfer Tax" form, under the "Required Information" heading, Joan completed the section under the subheading "If transfer is a Gift" (rather than the section under the subheading "If transfer is by devise or inheritance"). Both Joan and defendant signed that form, as well as a "Settlement Statement" that listed Joan and defendant as the "buyers." The deed did not specify that Joan and defendant would hold the property jointly with a right of survivorship. Plaintiff was not present when the deed was executed, although Joan later told her that she had put defendant on the title to the house and on Joan's bank accounts.

Joan died in October 2008. Because the bargain-and-sale deed did not state that the 2005 conveyance to defendant had been with a right of survivorship, upon Joan's death, the deed, as written, had the effect of transferring a one-half undivided interest in the residence to Joan's estate, subject to probate, and a one-half undivided interest to defendant not subject to probate, although Joan's intention in putting defendant on the deed to the house had been to avoid probate.

Upon Joan's death, defendant initially behaved as if he held the house in trust for the beneficiaries of Joan's

estate. Defendant began cleaning, repairing, and painting the premises, using funds from Joan's bank account that was now titled in his name. Defendant also used that account to pay the property's bills.[3] In May or June of 2009, when the home was ready to be put on the market, defendant approached plaintiff about moving into the house himself. Plaintiff agreed that defendant could move into the house, but required that defendant agree to sign a lease and pay a nominal rent.

Initially, defendant consented to those conditions. In early July, when defendant was starting to move in, plaintiff sent him the lease agreement. Defendant did not, however, sign the lease at that time. By late July or early August, plaintiff had calculated an appropriate rental amount for defendant: $750 per month, half of the market rental value of the house, given the minor repairs and maintenance that defendant would continue to undertake. Defendant did not, either then or at any point thereafter, tender a rent payment to the estate. The estate continued to pay both the home insurance and property taxes.

Around that time, plaintiff and defendant had their first conversation about the possibility of defendant purchasing the house from the estate. Defendant expressed anger at the prospect that he would need to mortgage the property in order to purchase it in full from the estate. In late fall of 2009, defendant began to assert that Joan had conveyed the house to him as a gift and had not intended for defendant to hold the property in trust for the other beneficiaries of Joan's will.

After defendant began to claim that Joan had given him the property outright and to disclaim that he held the property in trust for the benefit of Joan's beneficiaries, plaintiff, acting in her capacity as personal representative of her mother's estate, initiated this action for declaratory relief, seeking a declaration that defendant holds title to the home in a resulting trust for the benefit of himself, plaintiff,

---

[3] After Joan passed away, defendant used his mother's bank account to pay, in addition to Joan's hospital bills, the utility bills, maintenance expenses, and property taxes, and he apportioned the remaining account proceeds consistent with Joan's will.

and the other beneficiaries of Joan's will. In the alternative, plaintiff requested a declaration that defendant holds the property in a constructive trust for the benefit of himself, plaintiff, and the other beneficiaries of Joan's will. In his answer, defendant denied that Joan had transferred the property to him in trust, alleging that Joan had transferred the property to him as a gift and, beyond that, that Joan had intended for the transfer of interest to defendant to include a right of survivorship so that, upon Joan's death, full title of the property would transfer to defendant. Defendant counterclaimed for reformation, requesting that the trial court reform the deed to specify that Joan's 2005 conveyance of the property to herself and defendant was with a right of survivorship and to "reflect the intent of Joan E. Hamlin, that defendant Patrick L. Hamlin would be the sole owner of the property upon the death of Joan E. Hamlin."

At trial, the parties agreed that Joan had transferred the property to defendant with the objective of avoiding probate and that the deed's omission of a specification that defendant's interest in the property was with "right of survivorship" was a mistake that needed to be corrected through reformation of the deed. They disagreed, however, with respect to whether Joan intended to give the property to defendant outright or, instead, had transferred the property to him to hold in trust for the beneficiaries of her will. The trial court ultimately found that (1) Joan had intended that defendant's interest in the property would be with right of survivorship, and the deed mistakenly failed to specify that defendant held the property with right of survivorship; and (2) in transferring the property to defendant, Joan had not intended to give it to defendant but, instead, had intended for defendant to hold it in trust for the beneficiaries of her will. In making those findings, the trial court resolved conflicts in the testimony about Joan's intent by making express credibility findings; it credited plaintiff's testimony but did not find defendant to be a credible witness.[4] Based on its factual findings, the court (1) ruled that the deed should be reformed to specify that the transfer of the property from

---

[4] The court also expressly found that defendant's wife and the parties' brother, both of whom testified that Joan had wanted to give the house to defendant, were not credible witnesses.

Joan to Joan and defendant was with right of survivorship, and (2) declared that defendant held the property as the trustee of a resulting trust for the beneficiaries of Joan's will.

On appeal, defendant challenges the trial court's factual finding that, in deeding an interest in her home to defendant, Joan intended that defendant would hold the property in trust for the benefit of the beneficiaries of her will. He contends both that the trial court erred in admitting extrinsic evidence of Joan's intent in executing the deed to defendant and herself and, in particular, that our decision in *Connall v. Felton*, 225 Or App 266, 201 P3d 219, *rev den*, 346 Or 257 (2009), precluded the trial court from considering evidence of defendant's conduct subsequent to the execution of the deed in assessing whether defendant held the property as the trustee of a resulting trust. Defendant also argues that the evidence in the record—even if that evidence was properly admitted—is insufficient to support the trial court's factual finding that Joan did not intend to give the property to defendant but, instead, had transferred it to him to hold in trust for the beneficiaries of her will. Defendant further requests that we engage in *de novo* review of the trial court's factual finding that, in conveying an interest in her house to defendant, Joan intended for defendant to hold that interest in trust.

As an initial matter, we decline to exercise our discretion to engage in *de novo* review; this is not an exceptional case, and the trial court's express credibility findings based on live testimony militate against such review. ORAP 5.40(8)(d)(i); *Frontgate Properties, LLC v. Bennett*, 261 Or App 810, 812 n 2, 324 P3d 483, *rev den*, 356 Or 400 (2014). Accordingly, we review the trial court's factual findings to determine whether there is any evidence in the record to support them, and we review for legal error the court's legal conclusion that it could consider evidence extrinsic to the deed, including evidence of defendant's conduct subsequent to the execution of the deed, in determining whether defendant held the property in a resulting trust. *See Frontgate*, 261 Or App at 812 (stating standards of review applicable, respectively, to trial court's factual and legal determinations in equitable case in which we decline to review *de novo*).

Because a resulting trust is an "equitable obligation," *see Lozano v. Summit Prairie Cattlemens Assoc.*, 155 Or App 32, 37-38, 963 P2d 92 (1998), which a plaintiff must prove through clear and convincing evidence of the circumstances at the time of the conveyance, *Connall*, 225 Or App at 273-74, we review the trial court's factual findings to determine whether "there [is] evidence that the trial court *could [have found]* clear and convincing" that the grantor intended for the grantee to hold the property in trust, *Emerson v. Kusano*, 260 Or App 577, 580-81, 320 P3d 610 (2014) (articulating our standard of review of factual findings in cases involving a "clear and convincing" standard of proof, and explaining that we will not "reweigh the evidence in reviewing the trial court's conclusion that there is clear and convincing evidence") (emphasis added). Evidence of a fact is "clear and convincing" if it makes the existence of the fact "highly probable." *Connall*, 225 Or App at 274.

We first address defendant's argument that the trial court erred in considering evidence extrinsic to the deed in determining that Joan's conveyance of her house to defendant gave rise to a resulting trust. Defendant asserts that our decision in *Connall* precluded the trial court from considering extrinsic evidence, including, in particular, evidence of defendant's post-conveyance conduct, in determining whether Joan had transferred the house to him for the benefit of the beneficiaries of her will. We disagree.

In this case, unlike in *Connall*, both parties agreed (and the evidence indicates) that the deed did not fully reflect Joan's intentions in conveying an interest in the property to defendant. Moreover, in this case, unlike in *Connall*, defendant himself invoked the court's equitable jurisdiction, requesting that the court reform the deed to reflect what defendant claimed to be Joan's true intention: that the whole house (rather than just a half-interest in the house) would pass to defendant upon Joan's death. Under those circumstances, where *both* parties invoked the court's equitable jurisdiction, and both parties agreed that the deed did not fully reflect Joan's intent, but disagreed as to what that intent was, the trial court permissibly considered all relevant extrinsic evidence of Joan's intent in making the conveyance in order to ascertain what, in fact, that intent

was. *See* ORS 41.740 (authorizing consideration of parol evidence of the terms of a writing "where a mistake or imperfection of the writing is put in issue by the pleadings"); *Andrews v. North Coast Development*, 270 Or 24, 29-30, 526 P2d 1009 (1974) (parol evidence admissible to explain mistake in deed); *see also Reformation of Instruments*, 66 Am Jur 2d 360 § 113 (2011) (in suit to reform written instruments, including deeds, for mutual mistake, parol evidence is admissible to show true agreement). And evidence of the parties' "practical construction" of the deed—that is, what the "parties did under it"—is probative of that intent and, thus, relevant. *Yogman v. Parrott*, 325 Or 358, 364, 937 P2d 1019 (1997) (discussing *Tarlow v. Arntson*, 264 Or 294, 300, 505 P2d 338 (1973)); *see Copeland Sand & Gravel v. Estate of Angeline Dillard*, 267 Or App 791, 794, 341 P3d 187 (2014), *adh'd to on recons*, 269 Or App 904, 346 P3d 526 (2015) (rules of contract construction apply to deeds). In other words, by responding to plaintiff's suit by affirmatively invoking the court's equitable jurisdiction to reform the deed to expand his own interest in the house, defendant effectively opened the door to the trial court's consideration of any relevant extrinsic evidence regarding the nature of the conveyance.

We next address defendant's argument that the evidence was insufficient to support the trial court's factual finding that, in executing the deed to defendant, Joan did not intend to give the property to defendant but, instead, intended to convey the property to defendant to distribute to the beneficiaries of her will after her death. We conclude that the evidence in the record—taking into account the trial court's determinations that defendant and his supporting witnesses were not credible in their testimony—was sufficient to permit the trial court to find that it was highly probable that Joan intended to convey the property to defendant for him to distribute to the beneficiaries of her will upon her death.

Plaintiff testified that she and Joan had multiple conversations about putting one of Joan's children on the title to the house and the bank accounts in order to be able to transfer that property to Joan's heirs without going through the probate process; that Joan had originally suggested putting plaintiff on the title of the house and the bank

accounts in order to accomplish that goal; that plaintiff had recommended putting defendant's name on the title instead because of his geographic proximity to Joan; and that, after plaintiff made that recommendation, Joan had told her that she had put defendant on the title to the house. Plaintiff further testified that, after Joan's death, defendant treated the property as if it was the property of the estate. Defendant asked plaintiff for permission to move into the house. Both parties testified that defendant used the bank accounts—now in defendant's name only—to pay the property taxes and bills. Plaintiff further testified that defendant relied on funds from those accounts for the maintenance and repair work that he performed on the property. Finally, plaintiff and defendant both testified that defendant apportioned the remaining proceeds in the bank accounts in accordance with Joan's will. From that evidence, a factfinder could find that it was highly probable that Joan's intention in conveying an interest in her home to defendant was to create a mechanism for transferring the home to the beneficiaries of her will outside of the probate process, rather than to give the house to defendant.

Affirmed.