Argued and submitted January 23, 2018, reversed and remanded June 17, 2020

Joe PARTNEY
and Carol Partney,
*Plaintiffs-Appellants,*

*v.*

Mike RUSSELL
and Casey Humbert,
*Defendants-Respondents,*
*and*

Scotty FLETCHER
and Tom Humbert,
*Defendants.*

Umatilla County Circuit Court
CV151239; A164363

469 P3d 756

In this real property dispute, plaintiffs appeal a limited judgment disposing of their claims for adverse possession, declaratory relief, trespass, and property damage, all related to a purported easement permitting defendants to traverse plaintiffs' property. Plaintiffs first assign error to the trial court's denial of their motion for partial summary judgment, arguing that the court erred in concluding that an easement appurtenant existed over their property for the benefit of defendant Russell's neighboring property. According to plaintiffs, no valid easement ever existed, and, even if one had existed at some time, it was later extinguished by merger or abandonment. In their second assignment of error, plaintiffs contend that, for substantially the same reasons, the court erred in granting defendants' cross-motion for summary judgment. *Held*: The trial court erroneously concluded that a valid easement existed that permitted defendants' ingress and egress over plaintiffs' property. Therefore, the court erred both in denying plaintiffs' motion for partial summary judgment and in granting defendants' cross-motion for summary judgment.

Reversed and remanded.

Christopher R. Brauer, Judge.

Wade P. Bettis filed the brief for appellants.

Patrick M. Gregg argued the cause for respondents. Also on the brief was Corey, Byler & Rew, LLP.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DeHOOG, P. J.

Reversed and remanded.

_____

* DeVore, J., *vice* Hadlock, J. pro tempore.

## DeHOOG, P. J.

In this real property dispute, plaintiffs appeal a limited judgment disposing of their claims for adverse possession, declaratory relief, trespass, and property damage, all related to a purported easement permitting defendants to traverse plaintiffs' property. Plaintiffs raise two assignments of error. In their first assignment, plaintiffs argue that the trial court erred in denying their motion for partial summary judgment, based on the court's conclusion that an easement appurtenant to defendant Russell's neighboring property permitted that use.[1] In plaintiffs' view, no valid easement for ingress to, and egress from, their property ever existed; even if one had existed at some time, they argue, it was later extinguished by merger or abandonment.

In plaintiffs' second assignment of error, they contend that the trial court erred in granting defendants' cross-motion for summary judgment, based on the court's conclusions that an easement existed and that plaintiffs had failed to raise any material issue of fact as to their trespass claim. Specific to that claim, plaintiffs argue that genuine issues of material fact remain as to whether defendants exceeded the limits of any easement that may exist.[2] For the reasons that follow, we conclude that the trial court erred both in denying plaintiffs' motion for partial summary judgment and in granting defendants' motion as to the existence of an easement across plaintiffs' property; further, because the trial court's ruling as to plaintiffs' trespass claim was premised on its erroneous conclusion that a valid easement existed, that ruling also was erroneous. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

On an appeal from cross-motions for summary judgment, the trial court's ruling on each motion is reviewable. *Morris v. Kanne*, 295 Or App 726, 728, 436 P3d 36,

---

[1] Because defendant Russell is the only defendant on appeal with an ownership interest in any of the properties at issue, when discussing issues related to the parties' respective ownership interests, we refer to Russell by name. In all other instances, we refer to defendants collectively.

[2] The court granted defendants' cross-motion for summary judgment on all claims. On appeal, plaintiffs do not develop any arguments as to the court's ruling on the adverse possession or property damage claims. Therefore, we affirm the court's rulings as to those claims without further discussion.

*rev den*, 365 Or 195 (2019). "[W]e view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law." *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019) (citing ORCP 47 C). "No genuine issue as to a material fact exists if, based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C. We state the facts in accordance with those standards.

Plaintiffs and Russell own adjacent lots in Umatilla County. Plaintiffs own tax lot 1001 (TL 1001), which is legally known as the southeast quarter of the southwest quarter of Section 27, the purported servient tenement through which the easement runs. Russell owns tax lot 1002 (TL 1002), legally known as the southwest quarter of the southeast quarter of Section 27, which is the purported dominant tenement. The following drawing depicts the lots and surrounding area, including tax lot 1000 (TL 1000), which is a larger



lot that adjoins the lots at issue to the north and is also owned by plaintiffs.[3]

Plaintiffs and Russell are both successors in interest to Ronald and Ruby Haney, but neither lot was acquired directly from the Haneys. The Haneys' own title history is less than clear, as are some of the transactions that followed the Haneys' acquisition of the properties. We recount that history as best we can, relying on the exhibits in the record and the parties' undisputed accounts.

In December 1980, an individual, Lang, conveyed property including the lots at issue to an entity called "Seven Springs Development Corp." (Seven Springs), which the deed described as the "assignee" of the Haneys, "husband and wife, as tenants by the entirety." On September 6, 1984, the Haneys prepared and signed a "Declaration of Easement" (the Haney declaration). The declaration describes the Haneys as owners of the property encompassing TLs 1000, 1001, and 1002, and it purports to create an "easement for ingress and egress to Skyline Road, over, along and across all of said described property over all roadways now established and commonly known as Spring Basin Lane, Alpine Loop, Upper Alpine Loop, Lower Alpine Loop, Crystal Lane and White Fir Lane." The declaration further describes the easement as "appurtenant to [TLs 1000, 1001, and 1002.]"[4] It is undisputed that the Haneys prepared the declaration in anticipation of a subdivision and future road construction, but that, other than Skyline Road, which is depicted in the above diagram, the roadways it identifies never formally came into existence.[5] The Haneys attempted to obtain

---

[3] We have modified and annotated a map in the record to clearly indicate the lots owned by plaintiffs and Russell. As indicated, plaintiffs are also the legal owners of TL 1000, the 80 acres directly north of the lots at issue. Although TL 1000 is not involved in the present dispute, it appears repeatedly in the documents conveying and describing the property rights at issue.

[4] The declaration specifically states that the "easement shall be appurtenant to the Northwest quarter of the Southeast quarter and the Southwest quarter of the Southeast quarter and the Northeast quarter of the Southwest quarter and the Southeast quarter of the Southwest quarter of Section 27," *i.e.*, TLs 1000, 1001, and 1002.

[5] The parties submitted competing sworn statements, with plaintiffs averring that no other roads were established, and defendants' declaring that an unofficial roadway known as "Lower Alpine Loop" traversed a part of TL 1001.

approval for a subdivision on the land, but the Umatilla Planning Commission never approved their proposal.

On September 10, 1984, the Haneys, in a bargain and sale deed identifying themselves as president and secretary of Seven Springs, conveyed TLs 1001 and 1002 from Seven Springs to themselves as husband and wife, together with

> "an easement for ingress and egress to Skyline Road to be used in common with others over, along and across all of the West half of the Southeast quarter and the East half of the Southwest quarter of Section 27, Township 4 North, Range 38 E. W. M."

In other words, the deed transferred only TLs 1001 and 1002 to the Haneys, but it purported to convey an easement permitting them to traverse all of Section 27 then owned by Seven Springs—that is, TLs *1000*, 1001, and 1002—for purposes of accessing Skyline Road.

That same day, the Haneys executed two warranty deeds, one each for TL 1001 and TL 1002, and sold each of those lots to separate buyers.[6] The deed conveying TL 1001 did not reference the Haneys' declaration purporting to create an easement or the easement described in the deed from Seven Springs to the Haneys. It did, however, purport to convey, along with TL 1001, "an easement for ingress and egress to Skyline Road *** over, along and across" TLs 1000 and 1002. The conveyance of TL 1002 similarly purports to convey an easement for purposes of accessing Skyline Road, but "over, along and across" what is now plaintiffs' property, TLs 1000 and 1001. The deed conveying TL 1002 also lacks any express reference to the Haney declaration or the Seven Springs deed to the Haneys, but, unlike the deed to TL 1001, it indicates that the conveyance is "[s]ubject to easements *** of record."

On September 18, 1984, the Haney declaration, the deed from Seven Springs to the Haneys, and the deeds from

---

Given our disposition of plaintiffs' appeal, we need not decide whether this dispute was material to either side's motion.

[6] The Haneys conveyed TL 1001 to the Cornelisons and the Carscallens, as joint tenants, and TL 1002 to the Crosses.

the Haneys to the buyers of each of the Haneys' lots were recorded. Russell eventually acquired TL 1002 in October 2014.[7]

In 2008, the Haneys' grantees reconveyed TL 1001 to the Coppingers and Shamions by way of warranty deed. Unlike the Haneys' 1984 conveyance of TL 1001, the 2008 warranty deed provided that the property was being conveyed "[s]ubject to and excepting *** attached Exhibit 'A,'" which, in turn, referenced the Haney declaration recorded in 1984.

Plaintiffs ultimately acquired TLs 1000 and 1001 by warranty deed in May 2015. The conveyance to plaintiffs granted them "the following described real property free of encumbrances except as specifically set forth herein:"

"SEE EXHIBIT 'A' WHICH IS MADE A PART HEREOF BY THIS REFERENCE

"ENCUMBRANCES: SEE ATTACHED EXHIBIT 'A' FOR PERMITTED EXCEPTIONS[.]"

The referenced "EXHIBIT 'A'" was recorded along with the deed and included a legal description of the property conveyed to plaintiffs as well as its encumbrances. In particular, the conveyance included:

"<u>Tract I</u>

"<u>Township 4, North, Range 38, E.W.M.</u>

"Section 27: Northeast Quarter of the Southwest Quarter.

"Northwest Quarter of the Southeast Quarter.

"Section 27: Southeast Quarter of the Southwest Quarter.

"*****

"<u>Tract II-B (Easement)</u>

"Easement for ingress and egress, together with the terms and provisions thereof, contained under Declaration

---

[7] Although title to TL 1002 exchanged hands once more in between the Haneys' grantees and Russell, it is undisputed that each of the conveyances in Russell's chain of title purports to convey the easement at issue, and we do not separately address each deed.

recorded September 18, 1984 in Microfilm Reel 117, Page 994, Office of Umatilla County Records.

"SUBJECT TO THE FOLLOWING PERMITTED EXCEPTIONS:

"* * * * *

"3.   Roads and easements for ingress and egress over and across the described lands as such exist, including but not limited to those described under Declaration,

"Recorded : September 18, 1984, Microfilm Reel 117, Page 994, Office of Umatilla County Records."[8]

      In July 2015, shortly after acquiring TLs 1000 and 1001, plaintiffs filed a complaint against defendants, alleging adverse possession and trespass, and further seeking a declaration that no valid easement had ever encumbered TL 1001 or, if one had, that it had been extinguished.[9] Plaintiffs' declaratory relief claim asserted that defendants claimed a right to use plaintiffs' property pursuant to the 1984 Haney declaration and contended that the declaration was "null and void." Among other things, plaintiffs alleged that the purported easement had been "given by a party who was not the legal owner and had no authority to grant an easement on [p]laintiffs' property," that the asserted easement had been "terminated by merger of the servient and the dominant tenements," and that any easement had been "abandoned."

      Plaintiffs' adverse possession claim asserted that they and their predecessors had possessed TL 1001 for the requisite time under an honest belief that they owned the property "free and clear of any easements for ingress and egress and rights of way." Finally, plaintiffs' trespass claim alleged that defendants had unlawfully entered and caused damage to plaintiffs' property in late July 2015, including by cutting down 35-year-old timber and damaging a gate-post and game camera.

---

[8] The Haneys' Declaration of Easement was filed September 18, 1984, and labeled Microfilm Reel 117, Page 994, at the Office of Umatilla County Records.

[9] Plaintiffs have twice amended their complaint, but, in pertinent part, it remains substantially the same.

        In their answer, defendants admitted that they asserted an adverse interest in the purported easement and that they had used the easement. However, defendants otherwise denied the substantive allegations of the complaint and asserted that their entry and use of plaintiffs' property had been licensed and pursuant to legal right.

        The parties submitted cross-motions for summary judgment. Plaintiffs sought partial summary judgment as to the existence of the purported easement and asserted, based on an affidavit signed by Ronald Haney, that the easement had never come into existence, because it had not been "approved" by the Umatilla County Planning Commission. Defendants submitted a cross-motion seeking summary judgment as to all of plaintiffs' claims. Defendants asserted, among other things, that Seven Springs had granted the Haneys "a blanket easement for ingress and egress over [p]laintiffs' property to Skyline Road," and that the easement was both on file in the county records and appeared in both defendant Russell's and plaintiffs' chains of title. Following a hearing on the parties' cross-motions, the trial court denied plaintiffs' motion, granted defendants' motion, and entered a limited judgment in favor of defendants.

        During summary judgment proceedings, plaintiffs submitted affidavits asserting that, in October 2014, shortly before plaintiffs acquired ownership of TL 1001, defendants had "pioneered a corridor through the property."[10] According to plaintiffs, that included defendants cutting and clearing timber and "fauna" and moving the cleared material to the edge of the road, some of which appeared to be over 35 years old. Defendants submitted declarations contending that they had merely used and maintained a road—Lower Alpine Loop—through TL 1001. Thus, although defendants assert that their entry onto TL 1001 was permitted, they do not dispute having used and maintained a road on that lot since some time before plaintiffs acquired it. Further, defendants acknowledge having logged timber on TL 1002 from

_____

   [10] Plaintiffs' affidavits appear to reference a portion of TL 1000 rather than TL 1001, the subject of their suit. No party has suggested that this apparent discrepancy plays any role in the adequacy of plaintiffs' submissions to support or defeat summary judgment.

July 23, 2015 through July 25, 2015, using the road they had maintained on plaintiff's property to access the area of TL 1002 that they logged.

On appeal, plaintiffs argue that the court erred in denying plaintiffs' motion for partial summary judgment and in granting defendants' motion for summary judgment. Specifically, plaintiffs argue that the court erred in denying their partial summary-judgment motion because no issue of material fact existed as to the validity of the purported easement. That is, plaintiffs contend that no valid easement could have been created by the Haney declaration, and, even if one had been, it was extinguished by merger or abandonment. For largely the same reasons, plaintiffs argue that the court erred in granting defendants' motion as to the same issue. Additionally, plaintiffs argue that a genuine issue of material fact exists as to whether defendants trespassed on their property. Plaintiffs reason that, even if a valid easement does exist, a material issue of fact remains as to the limits of that easement and whether defendants' use fell within those limits.

Defendants respond that the trial court did not err, because plaintiffs failed to present evidence that would create a genuine issue of material fact as to the nonexistence of an express easement, which, they contend, was established by the Haney declaration and its subsequent "reiteration" in various deeds. Further, defendants argue that the trial court correctly granted defendants' motion as to plaintiffs' third claim for relief because an easement is a valid defense to trespass, and plaintiffs failed to present the evidence required to avoid summary judgment on that claim.

Given the procedural posture of this case, the central issue as to both of plaintiffs' assignments of error is whether, as a matter of law, a valid easement permits ingress and egress to Skyline Road across TL 1001. That is, no party has developed an argument that the purported easement's validity turns on a disputed issue of fact; rather, both sides contend that the existence—or nonexistence—of a valid easement is a question of law. For the reasons that follow, we agree that plaintiffs' appeal raises primarily a legal issue that we ultimately decide in plaintiffs' favor, and we

reverse. Further, to the extent that the record may otherwise raise questions of fact regarding the scope or misuse of any easement, our decision as to the primary issue renders those questions moot. Accordingly, we need not address them.

We begin our analysis by reviewing some of the relevant principles regarding easements, including the requirements for their creation and circumstances rendering them ineffective. As we have explained, "an easement is a 'non-possessory interest in the land of another' [that] allows the holder of the interest 'the right to pass across another's land.'" *7455 Incorporated v. Tuala Northwest, LLC*, 274 Or App 833, 840, 362 P3d 1179 (2015) (quoting ORS 105.170(1)); *see also Bloomfield v. Weakland*, 224 Or App 433, 445, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009) ("An easement is a right in one person to do certain acts on land of another."). "An easement may be appurtenant or in gross." *7455 Incorporated*, 274 Or App at 840. "An easement appurtenant involves two parcels of land—the dominant tenement, to which the right of use belongs, and the servient tenement, which is subject to the use[.]" *Id.*

Easements can be created by grant, either express or implied, or by prescription. *Tusi v. Jacobsen*, 134 Or 505, 508, 293 P 587, *reh'g den*, 134 Or 505, 293 P 939 (1930). An express easement, such as defendants contend exists here, is "one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement." *Bloomfield*, 224 Or App at 445. Further, "[w]hen a property description in a legal document refers to a property description in another legal document, the reference is considered as if the description is incorporated therein." *Stott v. Stevens*, 127 Or App 440, 445, 873 P2d 380, *rev den*, 319 Or 274 (1994); *see Templeman et al v. Leigh,* 130 Or 24, 30, 278 P 989 (1929) (stating that "a deed may refer to another deed or map or plat for a description of the land conveyed and the deed, map or plat to which reference is thus made is considered as incorporated in the deed itself").

An express easement may be extinguished only by consent, prescription, abandonment, or merger. *Cotsifas v. Conrad*, 137 Or App 468, 471, 905 P2d 851 (1995). As relevant

to plaintiffs' merger argument, an easement is extinguished by merger when the owner of the dominant estate acquires ownership of the servient estate. *Witt v. Reavis*, 284 Or 503, 507, 587 P2d 1005 (1978) (citing *Dressler et al v. Isaacs et al*, 217 Or 586, 591, 343 P2d 714 (1959) ("The union of the dominant and servient estates [in the same owner] would, of course, destroy the easement.")); *Restatement (First) of Property* § 497 (1944) ("An easement appurtenant is extinguished by unity of ownership of estates in the dominant and servient tenements to the extent to which the uses which could have been made prior to the unity by virtue of ownership of the estate in the dominant tenement can be made after unity by virtue of ownership of the estate in the servient tenement.").

Once an easement has been extinguished, it cannot be revived, only recreated. *Faulconer v. Williams*, 327 Or 381, 394-95, 964 P2d 246 (1998) ("Generally, once an easement is extinguished, it is gone forever."). Further, "a mere later reference [in a conveyance] to an already extinguished easement does not itself recreate the easement." *Id.* at 395 (noting that Oregon courts had not yet decided the issue but recognizing that to be the nearly unanimous view of courts in other jurisdictions). As other courts have reasoned, "any such wording merely acknowledges the easement as a previously existing right burdening the property being conveyed." *Id*. To give effect to such a reference and, thereby, "recreate the easement *de novo*, *** evidence of an intent to do so must appear on the face of the deed." *Id*.

Turning to the parties' specific arguments with those principles in mind, we begin with plaintiffs' contention that the Haney declaration cannot have established an easement. Plaintiffs argue that, "at the time of the alleged easement['s] creation, there was no dominant tenement and no [servient] tenement, only one tenement."[11] Plaintiffs explain that, because the Haney declaration's descriptions

_____

[11] Although plaintiffs have described the Haney declaration as "null and void," they do not appear to contend that, because the Haneys executed the declaration on September 6, 1984, but did not acquire ownership of the affected property until September 10, 1984, they had no authority to create an easement or otherwise determine rights regarding any of the property at the time of execution.

of the burdened property and the benefitted property are coextensive, there was no "land of another." Rather, plaintiffs argue, the declaration merely describes a single tenement in two different ways and so fails to create a valid easement appurtenant.

Defendants' entire argument as to the validity of the declaration of easement is that plaintiffs' argument "misstates the ownership interests of the involved parcels at the time the Declaration of Easement was executed and misunderstands the express language in the various deeds, which language expressly referred to the express blanket easement." Although, in connection with a later argument, defendants discuss subsequent deeds that reference the Haney declaration and its provisions, they do not explain how plaintiffs' understanding of the ownership interests at the time of the declaration is mistaken or how it affects the validity of the declared easement.[12] For the reasons that follow, we conclude that, if any easement did encumber plaintiffs' property, one did not do so by virtue of the Haney declaration itself.

The Haney declaration, which was executed on September 6, 1984, and recorded two weeks later, describes the owned property as "the [w]est half of the [s]outheast quarter and the [e]ast half of the [s]outhwest quarter of Section 27"; that description encompasses TLs 1000, 1001, and 1002 exactly. The declaration purports to expressly grant "an easement for ingress and egress to Skyline Road over, along and across all of said described property"—*i.e.*, TLs 1000, 1001, and 1002. Finally, although the declaration describes the easement it purports to create as appurtenant to four quarters (as opposed to two halves) of the southeast and southwest quarters of Section 27, it nonetheless describes exactly the same area, that encompassed by TLs 1000, 1001, and 1002.

_____

[12] To be clear, plaintiffs do argue that "the Haneys owned all of the property," when, in fact, it appears undisputed that, at the time of the declaration, the owner of the property described in the declaration was Seven Springs, and not the Haneys. However, we do not understand defendants to argue that any difference as to who, exactly, owned all of the property is material to whether the declaration identified both a dominant and servient tenement. Thus, we take plaintiffs arguments that the Haneys "had unity of ownership" to be directed at Seven Springs's ownership status at the time, and not the Haneys' status.

Thus, as plaintiffs emphasize, the declaration describes a single tract of land—or, perhaps, multiple contiguous tracts of land in common ownership—as being both the benefitted and burdened tenements. As a result, the easement it purports to create lacks a characteristic fundamental to easements—it provides no interest in "land of another." *7455 Incorporated*, 274 Or App at 840. Thus, by definition, the declaration cannot be viewed as creating a valid easement. *See id*. ("An easement appurtenant involves two parcels of land—the dominant tenement, to which the right of use belongs, and the servient tenement, which is subject to the use[.]"). Nothing in defendants' argument that plaintiffs misstate the ownership interests involved suggests otherwise. That is, even if defendants might argue as to *who* owned the affected property on September 6, 1984, they neither suggest that any part of the property was under separate ownership at the time, nor that the declaration describes more than a single tenement. Accordingly, defendants' argument that the declaration itself established an easement on plaintiffs' property fails.

That is not to say that the Haney declaration could not serve as the basis of a later-created easement. As noted, when the Haneys executed the declaration, their plan was to develop a subdivision on the described land, together with various roads and mutual access to and from Skyline Road. And, as a leading treatise on the matter explains, an easement, or "servitude," is created "if the owner of the property to be burdened *** enters into a contract or makes a conveyance intended to create a servitude that complies with *** [the statute of frauds]" or "conveys a lot or unit in a general-plan development or common-interest community subject to a *recorded declaration of servitude* for the development or community." *Restatement (Third) of Property: Servitudes* (Restatement of Servitudes) § 2.1(1) (2000) (emphasis added); *see also Bolinger v. Neal*, 259 P3d 1259, 1264 (Colo App 2010) (relying on same principle). However, even if the declaration is intended to define the scope of an easement—and even if it is recorded—the declaration itself does not establish the easement; only subsequent conveyances made in reference to the declaration can have that effect. As the Restatement of Servitudes explains,

"[r]ecording a declaration or plat setting out servitudes does not, by itself, create servitudes. So long as all the property covered by the declaration is in a single ownership, no servitude can arise. Only when the developer conveys a parcel subject to the declaration do the servitudes become effective. Ordinarily the intent to convey a lot or unit subject to the declaration is expressed in the deed, but the intent may also be inferred from the circumstances. If the declaration has been recorded, a conveyance of a lot or unit to a consumer purchaser sufficiently manifests the intent to effectuate the development plan and subject all property in the development to the terms of the declaration."

*Restatement* § 2.1 comment c.

Although neither the Restatement of Servitudes nor its commentary is binding on us, its discussion of easements in this context is consistent with the views that we and the Supreme Court have expressed regarding the establishment of easements. Specifically, both the restatement provision and the commentary quoted above are consistent with our case law describing easements as affording property owners rights as to "land of another," *see, e.g.*, *7455 Incorporated*, 274 Or App at 840, as well as case law requiring separate ownership of the dominant and servient tenements. *See Witt*, 284 Or at 508 (holding that, if, "at any time," the fee simple owner of the dominant tenement acquires fee simple title to the servient tenement, any easement is extinguished). Moreover, we have acknowledged the principle discussed in the quoted section of the restatement by holding that "a plat can give rise to an express easement or dedication for private or public use." *Bloomfield*, 224 Or App at 446. We therefore afford that discussion some weight in our analysis. *See Brewer v. Erwin*, 287 Or 435, 455 n 12, 600 P2d 398 (1979) (noting that, although sections of the Restatements of the American Law Institute are not necessarily authoritative, we sometimes quote them as "shorthand expressions of the court's view that the analysis summarized in the Restatement corresponds to Oregon law applicable to the facts of the case before the court").[13]

_____

[13] As a more general matter, although we do not regard the restatements as binding statements of Oregon law, we do find them relevant and helpful "descriptive *restatements* of the law." *McPherson v. Oregon Dept. of Corrections*, 210 Or App 602, 612, 152 P3d 918 (2007) (emphasis in original). Oregon has followed the

With that understanding, we turn to whether subsequent references to the Haney declaration—or to the easement it purported to establish—created an easement encumbering TL 1001, starting with the Seven Springs deed to the Haneys (the Haney deed). As we discuss above, the Haney deed conveyed to them ownership of TLs 1001 and 1002, "together with an easement for ingress and egress to Skyline Road to be used in common with others, along and across all of [TLs 1000, 1001, and 1002]." Significantly, the Haney deed neither references the Haney declaration nor purports to reserve an easement on behalf of Seven Springs or anyone else; rather, the Haney deed purports only to *grant* the Haneys an easement extending over their own newly acquired property, as well as over adjacent property that Seven Springs retained for a time, TL 1000.

Because the Haney deed did not reference the Haney declaration—or, for that matter, any encumbrances, whether of record or otherwise—that conveyance arguably did not incorporate the declaration. *See Restatement* § 2.1 (discussing the conveyance of lots or units in a general-plan development "subject to a recorded declaration of servitude for the development"). But, as the restatement explains, a deed's express language does not always control. *Restatement* § 2.1 comment c. That is, "the intent to convey a lot or unit subject to the declaration \* \* \* may also be inferred from the circumstances." *Id.* And here, the circumstances include the Haneys conveying TLs 1001 and 1002 to themselves less than a week after executing a declaration that purports to create an easement over that property; simultaneously executing a deed to the Crosses conveying TL 1002 "subject to easements of record"; and then recording those conveyances at the same time as the Haney declaration. Thus, at least arguably, one might well infer that the Haneys intended the Haney deed to be subject to the Haney declaration.

restatements as to various property related issues. *See, e.g.*, *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979) (following the restatement rule regarding prescriptive easements); *Hamann v. Brimm*, 272 Or 526, 529, 537 P2d 1149 (1975) (same); *Bernards et ux v. Link and Haynes*, 199 Or 579, 588, 248 P2d 341 (1952), *on reh'g*, 199 Or 579, 263 P2d 794 (1953) (following the restatement rule regarding abandonment of easements). Much like the rules within the restatements, we refer to specific comments contained in the restatements when they are "persuasive and relevant to resolving the case before us." *Nelson v. Nelson*, 174 Or App 252, 258, 23 P3d 424 (2001).

Ultimately, however, we need not consider that possibility. We understand plaintiffs to argue that, whether or not the Haney declaration or the Haney deed created an easement over TL 1001 in favor of TL 1002, any such easement was extinguished by merger when the Haneys acquired "unity of ownership" of both lots. Moreover, as we conclude above, the declaration itself did not create an easement. Thus, if plaintiffs are correct, and the Haneys' concurrent ownership of those lots resulted in merger, then it does not matter if they conveyed the lots from Seven Springs to themselves with the intent that they be subject to the declaration—any easement would be ineffective anyway.

In defendants' view, plaintiffs are not correct, but it is defendants' merger argument that misses the mark. They contend that merger never occurred because Russell, the current owner of the purported dominant tenement, never acquired plaintiffs' property, the servient tenement. However, the immediate question is not whether an easement that the Haneys created was extinguished by unity of ownership *after* they sold the properties; the question is whether any easement that they may have created survived the Haneys' simultaneous acquisition of TLs 1001 and 1002. The answer, we conclude, is no.

More specifically, although we do not necessarily view the "merger" concept as a perfect fit here, we agree with plaintiffs that the Haneys did not acquire an easement over TL 1001 by virtue of the Haney deed. Our reasoning follows from our conclusion regarding the Haney declaration. As we explained in that regard, there was only one tenement when the Haneys executed the declaration; it followed that they could not have created an interest in one tenement for the benefit of another by virtue of the declaration alone. 304 Or App at 692. Similarly, when Seven Springs conveyed TLs 1001 and 1002 through the Haney deed, the Haneys acquired a single tenement comprising those lots. As a result, nothing they acquired through the Haney deed established a right to use one owner's property for the benefit of another. Therefore, for the same reason that the Haney declaration did not create an easement, the Haney deed cannot have created one.

We recognize that "merger" may be somewhat of a misnomer here. As noted, merger occurs if, "at any time," the owner of the dominant tenement acquires fee simple title to the servient tenement, thereby *extinguishing* any easement. *Witt*, 284 Or at 508.[14] And here, the Haneys did not acquire one tenement while already owning another; instead, what happened here is that the Haney deed converted a single tenement under the corporate ownership of Seven Springs to a single tenement under the private ownership of the Haneys. Thus, an existing easement did not merge at the time of transfer. Rather, no easement over TL 1001 in favor of TL 1002 ever came into existence. However, we see no material distinction between concluding, on the one hand, that an existing easement merged at the time the Haneys acquired both lots, and concluding, on the other hand, that no easement ever came into existence—either way, following the Haneys' acquisition of TLs 1001 and 1002, no easement permitted access across TL 1001.[15] At least, that is, no easement permitted that access unless one allowing it was created at some point *after* the Haney deed.

We turn, therefore, to that question: If neither the Haney declaration nor the Haney deed created an easement over TL 1001 in favor of TL 1002, did some later conveyance or other act do so? Defendants emphasize that the purported easement is reflected in the chains of title for both lots, thereby placing plaintiffs on notice of the encumbrance on their property. Once again, however, defendants' argument misses its mark. The question is not whether plaintiffs were on notice of an easement on their property; the question is whether the purported easement either existed when

[14] Although we describe merger as occurring when the dominant estate holder acquires the servient estate, we do not read the case law as suggesting that it matters for purposes of merger whether the concurrent owner first held the dominant tenement or the servient one. Indeed, in *Witt*, the conveyances on which the Supreme Court based its merger ruling appear to have occurred at exactly the same time. *See Witt*, 284 Or at 506 n 1.

[15] The reason the difference is not material is that, once extinguished by merger, an easement cannot be revived; it can only be recreated. *See* 304 Or App at 690 (citing *Faulconer*, 327 Or at 394-95 (stating, "[g]enerally, once an easement is extinguished, it is gone forever"; furthermore, "a mere later reference [in a conveyance] to an already extinguished easement does not itself recreate the easement")). Thus, in that regard, an extinguished easement is materially indistinguishable from one that has never come into existence.

they acquired their property or, at least, was created at that time.

True, in conveying *TL 1002* to the Crosses, the Haneys expressly stated that they were conveying an easement that permitted travel over TL 1001. And, one could conceivably argue that, on September 10, 1984, the two lots momentarily entered separate ownership, giving the Haneys the opportunity to create an easement encumbering TL 1001. However, defendants have never made that argument. That is, they did not argue to the trial court, and they do not contend on appeal, that the Haneys conveyed the lots in such a way as to separate them into two tenements and encumber TL 1001 before it became the property of the Cornelisons and Carscallens, free and clear. Specifically, even though the Restatement of Servitudes indicates that the express language of a deed does not always control, defendants have never argued that there is either a factual dispute or an absence thereof as to the Haneys' intent in that regard.[16] As a result, defendants were not entitled to prevail on either summary-judgment motion on that basis and cannot prevail on that basis on appeal. *See Eklof v. Steward*, 360 Or 717, 736, 385 P3d 1074 (2016) (holding that it is improper for a trial court to decide a summary-judgment motion on a basis not raised in the motion); *Secor Investments, LLC v. Anderegg*, 188 Or App 154, 169-70, 71 P3d 538 (2003) (an argument not raised in opposition to a summary-judgment motion is not preserved for appeal).

Finally, to the extent that defendants argue that they should prevail because an easement was created by some event occurring after the Haneys had conveyed both lots, we again disagree. As far as we can tell, defendants do not actually argue that an easement across TL 1001 was created at some point between the conveyance of both lots and plaintiffs' acquisition of their property. They argue that the purported easement is in "the chain of title for both Plaintiffs'

---

[16] Had defendants made that argument—*i.e.*, that the Haneys had intended to create an easement encumbering TL 1001 despite omitting any reference to one in the deed to that property—the trial court would have had to consider whether anything in the record, such as Ronald Haney's affidavit asserting that no easement had ever existed, raised a material factual dispute regarding that intent.

and Russell's property," but that argument appears to be an extension of their argument that the Haney declaration or deed created an easement, and not an argument that an easement was created at some later time. Similarly, defendants argue that the easement was later "reinforced" and "granted again" in the conveyance to Russell, but, again, that appears to be an argument that a previously existing easement was conveyed to Russell, and not that Russell's predecessor created one anew on his behalf. If, however, defendants' argument on appeal is, in fact, that one of the Haneys' successors created the easement that defendants now seek to enforce, that argument fails.

One difficulty with that argument is that, other than an oblique reference to ORS 93.710(1) (relating, in part, to notice to third parties being presumed if an instrument creating an easement has been recorded), defendants do not explain how the conveyance of TL 1002 to Russell or his predecessors could encumber TL 1001, when, after the Haneys, the owners of TL 1002 had no rights in TL 1001 to convey. And, as to plaintiffs' chain of title, defendants point to no evidence that plaintiffs' predecessors after the Haneys intended to create an easement in favor of TL 1002, much less evidence so one-sided that defendants would be entitled to prevail on the easement issue as a matter of law. And, without evidence to that effect, there is no reason to conclude that the references to the Haney declaration or related easement in plaintiffs' chain of title were anything other than mere "acknowledge[ments of] the easement as a previously existing right burdening the property being conveyed." *Faulconer*, 327 Or at 395.

For the foregoing reasons, the trial court erred in denying plaintiffs' partial motion for summary judgment and granting defendants' motion, based on its conclusion that a valid easement encumbered plaintiffs' property. Furthermore, to the extent that the court's grant of defendants' summary-judgment motion as to the trespass claim also was based on that erroneous belief, that ruling, too, was erroneous. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.