No. 449          May 21, 2025          619

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Carol A. DeJARDIN,
Trustee of the Carol A. DeJardin Revocable Trust,
*Plaintiff-Appellant,*

*v.*

Maureen BONFIGLIO
and Claude Bonfiglio,
Co-Trustees of the Bonfiglio Family Trust,
*Defendants-Respondents.*

Clackamas County Circuit Court
22CV07307; A182108

Jeffrey S. Jones, Judge.

Argued and submitted April 15, 2025.

Richard W. Todd argued the cause for appellant. Also on the brief was Young McRostie Todd, LLP.

Jillian Pollock argued the cause for respondents. Also on the brief were Chris Fowler and Buckley Law P.C.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In this dispute between neighbors, plaintiff appeals a declaratory judgment in favor of defendants. Plaintiff and defendants own neighboring pieces of riverfront property in West Linn. Plaintiff sought to build a house on her property, in violation of a deed restriction protecting river views from defendants' home. Plaintiff requested, among other things, that the trial court declare the deed restriction invalid. On appeal, plaintiff raises four assignments of error, contending that the trial court erred in (1) concluding that the deed restriction was not an easement and that the doctrine of merger did not apply to her case; (2) failing to determine that the deed restriction was void under the statute of frauds; (3) finding that plaintiff was aware of the deed restriction; and (4) finding that plaintiff's claim was barred by laches. We affirm.

In reviewing an equitable action, such as a declaratory judgment action to quiet title, we review the trial court's factual findings to determine whether there is any evidence in the record to support them, and we review for legal error the court's legal conclusions. *Hammond v. Hammond*, 246 Or App 775, 777, 268 P3d 691 (2011).[1]

In 1999, both properties were owned by married couple Richard and Joyce Ares (not parties to this suit). The Areses lived in a home located at 955 Willamette Falls Drive (property A). The adjacent property, at 953 Willamette Falls Drive (property B), was an empty lot. The Areses wished to sell property B; however, they wanted to restrict development in order to protect their views of the river.

Plaintiff expressed interest in purchasing the property. According to their testimony, which the trial court explicitly credited, the Areses told plaintiff about their intent to restrict building to protect their views of the river

---

[1] Plaintiff notes that we have discretion to review the matter *de novo*. We decline to do so for two reasons. First, plaintiff does not advance any argument that this is an "exceptional case," or explain with specificity why its case merits *de novo* review. *See* ORAP 5.40(8)(a) (appellant *shall* concisely state the reasons why the court should exercise discretion to review *de novo* (emphasis added)). Second, the trial court made express credibility findings based on live testimony, which "militate[s] against such review." *Hamlin v. Hamlin*, 271 Or App 647, 653, 352 P3d 737 (2015) (citing ORAP 5.40(8)(d)(i)).

from their home and that the deed restriction would be recorded at the time the property was sold.

Plaintiff purchased property B in December 1999. That same day, the deed restriction was recorded in the county records. Although the settlement statement for the transaction mentioned the deed restriction, the deed itself did not list the restriction as one of the listed encumbrances on the property. In August 2000, plaintiff conveyed property B to her trust by warranty deed. That 2000 deed, which was signed by plaintiff, did contain the deed restriction as one of the property's encumbrances.

Defendants later purchased property A from the Areses in 2002. Defendants were informed by the Areses at that time that property B was subject to a building restriction.

*First Assignment of Error.* Plaintiff contends that the trial court erred in concluding that the deed restriction filed by the Areses was in fact a deed restriction rather than an easement. According to plaintiff, any purported easement created by the Areses would be invalid because of the "doctrine of merger," applicable only to easements. That doctrine provides that, because an easement is an interest in the land of *another*, once the owner of the easement acquires an interest in the land burdened by the easement, the easement is extinguished. *See generally Witt v. Reavis*, 284 Or 503, 508-09, 587 P2d 1005 (1978) (so explaining). Plaintiff argues that no easement was ever created, because the Areses owned *both* property A and property B at the time they sought to restrict property B. By extension, plaintiff contends that the deed she conveyed to her trust that did list the restriction had no legal effect, because it was referencing an encumbrance that did not exist.

The trial court did not err for two reasons. First, regardless of whether the restriction is classified as a deed restriction or an easement, the "doctrine of merger" generally applies when an owner of land benefited by an easement subsequently acquires land burdened by that easement. *Id.* at 508. It is well settled that a seller may reserve an easement or place other restrictions when selling land. *See, e.g.,*

*Lawrence v. Peel*, 45 Or App 233, 235-36, 607 P2d 1386 (1980) (seller retained access easement over driveway across adjacent land when selling adjacent parcel); *Beck v. Lane County*, 141 Or 580, 588, 18 P2d 594 (1933) ("A person owning a piece of land and selling a portion thereof may, for the benefit of his remaining land, impose upon the land granted any restrictions, not against public policy, that he deems fit.").

Plaintiff's reliance on *Partney v. Russell*, 304 Or App 679, 469 P3d 756 (2020), to support her contention that any restriction was extinguished by merger is misplaced. In *Partney*, the neighboring parties disputed the existence of an easement. The parties disputed whether an earlier declaration by a landowner, or a subsequent conveyance of the land that referenced the declaration, created an easement. We noted that a declaration that purports to grant an easement in one's own land is invalid, on its own. *Id.* at 693 (quoting *Restatement (Third) of Property: Servitudes* § 2.1 comment c (2000) ("'[R]ecording a declaration or plat setting out servitudes does not, by itself, create servitudes. So long as all the property covered by the declaration is in a single ownership, no servitude can arise.'")). However, subsequent conveyances that expressly or by implication reference such a declaration can create an easement. *Id.* (quoting *Restatement* § 2.1 comment c ("Only when the developer conveys a parcel *subject to the declaration* do the servitudes become effective. Ordinarily the intent to convey a lot or unit subject to the declaration is expressed in the deed, but the intent may also be inferred from the circumstances." (Emphasis added.))). Ultimately, the subsequent conveyance in *Partney*, which continued the common ownership of the parcels of land at issue, did not create an easement. *Id.* at 696. Here, unlike in *Partney*, the Areses created the restriction when conveying their land to someone else.[2]

Second, there was sufficient evidence in the record to support the trial court's conclusion that a valid deed restriction was created. A deed restriction, like other restrictive covenants pertaining to land, must comply with certain legal requirements in order to be enforceable:

---

[2] We also recognized that merger was "somewhat of a misnomer" and not "a perfect fit" for those facts. *Partney*, 304 Or App at 695-96.

"'(1) there must be privity of the estate between the promisor and his successors; (2) the promisor and promisee must intend that the covenant run; (3) the covenant must touch and concern the land of the promisor; and (4) the promisee must benefit in the use of some land possessed by him as a result of the performance of the promise.'"

*Butler Family LP v. Butler Brothers, LLC*, 283 Or App 456, 463, 388 P3d 1135 (2017) (quoting *Nordbye v. BRCP/GM Ellington*, 246 Or App 209, 225, 266 P3d 92 (2011), *rev den*, 352 Or 33 (2012)); *see also Huff v. Duncan*, 263 Or 408, 411-12, 502 P2d 584 (1972) (explaining requirements). In addition, the covenant must be in writing, ORS 41.580, and subsequent owners must have notice of the covenant, ORS 93.640.

The evidence here permitted the trial court to find that a valid deed restriction was created and is enforceable against plaintiff. That evidence included testimony from the Areses that they told plaintiff about the deed restriction, testimony from plaintiff that she offered to restrict development on a portion of her land to protect defendants' views, and testimony from the Areses' lawyer that he drafted and filed a deed restriction. The evidence also included documentary evidence: the recorded restriction itself, signed by the Areses, and a later deed that conveyed property B to plaintiff's trust, subject to the restriction.

Plaintiff's sole argument is that there is no distinction between a deed restriction and an easement under the facts of this case, and an easement would have been extinguished by merger. In our view, plaintiff's argument misses the point. Whether plaintiff's property is subject to a negative easement benefiting defendants' property, or whether plaintiff's property is subject to a deed restriction that restricts her development, there was sufficient evidence for the trial court to find that the parties intended for plaintiff's property to be encumbered by the view restriction. *See Lute v. Cascadia Tower Incorporated*, 336 Or App 155, 157, 561 P3d 112 (2024) (noting that our objective in interpreting a deed "is to ascertain the meaning that most likely was intended by the parties who entered into it").[3] And, as we have already

---

[3] Plaintiff's technical argument, although possibly consistent with older Oregon case law, is at odds with the modern view of servitudes explained in the *Restatement*. *See Duester v. Alvin*, 74 Or 544, 552, 145 P 660 (1915) ("Courts

explained, even if an easement were created, it would not have been terminated by merger under these facts.

*Second Assignment of Error.* Plaintiff next argues that the deed restriction is void under the statute of frauds because she did not sign it. *See* ORS 41.580 (agreement "for the sale of real property, or of any interest therein" must be in writing and "subscribed by the party to be charged"). However, covenants that run with the land do not need to be separately signed by a grantee that accepts the deed subject to those covenants. *Norby v. Section Line Drainage Dist.*, 159 Or 80, 84, 76 P2d 966 (1938); *see also Duester v. Alvin*, 74 Or 544, 551, 145 P 660 (1915) ("When land is *granted subject to such restrictions*, the grantee, who had knowledge thereof before accepting a conveyance of the title to the premises, cannot equitably repudiate the restrictions, or refuse to comply with or fulfill them." (Emphasis added.)). As previously discussed, plaintiff accepted the deed subject to its restriction, thus, the trial court correctly concluded that plaintiff's property was subject to a valid deed restriction protecting the views from defendants' home.

*Third Assignment of Error.* Plaintiff also argues that the trial court erred in finding that she was aware of the deed restriction or its intent. We have reviewed the record and conclude there is sufficient evidence to support those findings. As mentioned, several witnesses testified that plaintiff knew about the deed restriction and its recording. The trial court expressly found those witnesses credible, and we are bound by those factual findings, as they are supported by the record. *Frontgate Properties, LLC v. Bennett*, 261 Or App 810, 812, 324 P3d 483, *rev den*, 356 Or 400 (2014).[4]

Affirmed.

---

of equity will enforce, by injunction, negative covenants and clauses in deeds, restricting the use of real estate, though such conditions do not, in law, constitute easements or covenants running with the land."). The modern view holds that negative easements are the same as restrictive covenants and has dropped any distinction between them. *Restatement (Third) of Property: Servitudes* § 1.2 comment h (2000); *see also Foundation for the Preservation of Historic Georgetown v. Arnold*, 651 A2d 794, 797 (DC 1994) (distinction between negative easements and restrictive covenants is vague and unconvincing).

[4] Our disposition obviates the need to address plaintiff's fourth assignment of error challenging the trial court's conclusion that the affirmative defense of laches barred plaintiff's claim.