Argued December 14, 1927, modified January 17, 1928.

## MARGARET B. BLUNDELL *v.* DAVID W. PUGH
### ET AL.

(263 Pac. 75.)

Dedication—Dedication to Public of Highway is not Complete Until
Public has Accepted, and Until Then Owner may Recall Dedica-
tion.

1. In order to make dedication of property to public for high-
way complete, and to charge public with duty to repair, there must
be acceptance by public, and until that time owner may recall
dedication.

Counties—County Court is Court of Record.

2. County Court is court of record.

Vendor and Purchaser—Grant, in Consideration for Construction
of Roadway Through Grantor's and Grantee's Property, Made
by Grantor, With Full Knowledge of Facts, will not be Set
Aside for Fraud and Mistake.

3. Where grantor conveyed lot, in consideration that roadway
be built through her land and land of grantees, with knowledge

1. See 13 R. C. L. 27.
2. See 12 R. C. L. 236.

of nature of transaction and understanding that she was conveying title, brought action to set aside conveyance for fraud and mistake, *held* that, since court cannot relieve parties from imprudent bargains, and they must suffer consequences of their indiscretion, unless an undue advantage has been taken, conveyance will not be set aside.

Cancellation of Instruments, 9 C. J., p. 1254, n. 3, p. 1256, n. 31.
Dedication, 18 C. J., p. 72, n. 79, p. 77, n. 33, p. 78, n. 35, p. 118, n. 44.
Fraud, 26 C. J., p. 1102, n. 79.

From Marion: L. H. McMAHAN, Judge.

Department 2.

MODIFIED.

For appellants there was a brief over the names of *Mr. Oscar Hayter* and *Messrs. Page, Page & Ray L. Smith,* with oral arguments by *Mr. Hayter* and *Mr. Rollin K. Page.*

For respondent there was a brief over the name of *Messrs. Carson & Carson,* with an oral argument by *Mr. John K. Carson.*

BROWN, J.—Based upon the alleged ground of fraud and mistake, the plaintiff brought this suit for the cancellation of two deeds executed by her to the defendants on March 3, 1924, conveying lot 16, block 7, in Morningside Addition to Salem, Oregon, and a twenty by fifty foot parcel of land abutting upon the west end of that lot. The grantor, a widow about sixty-five years of age, and inexperienced in business, depended upon a son for guidance in her business transactions. On the other hand, David W. Pugh, one of the grantees and a defendant herein, is an intelligent and experienced business man.

In December, 1922, the defendants purchased lot 15, Morningside Addition to the City of Salem, for the

purpose of constructing a residence thereon, and thereafter added certain abutting property by purchase. About the time of the completion of their residence on lot 15, defendant David W. Pugh opened negotiations with plaintiff for the purchase of lot 16, together with the small parcel of land hereinbefore referred to as the twenty by fifty foot parcel. The plaintiff refused to sell, but later advised the defendants that Percy Blundell, her son, was her agent. Defendants continued their negotiations with the agent and with the plaintiff, in the hope of acquiring lot 16 and the small parcel. They contend that, as a result of these negotiations, the plaintiff promised and agreed, for and in consideration of the construction by them of a roadway through plaintiff's lands, to convey to defendants lot 16 and the twenty by fifty foot parcel abutting thereon. Plaintiff contends that the defendants agreed that, in consideration of the conveyance by her to Marion County, Oregon, for the purpose of a public road, of a thirty-foot strip of land through her premises, they would continue the proposed road through their premises to an open highway, thus establishing a loop road, which would be a thing of value to plaintiff's premises.

Defendant David M. Pugh caused the proposed road to be surveyed from Fairview Avenue northward through plaintiff's land to the south boundary of lot 16, block 7, of Morningside Addition. He caused the boundary lines of lot 16 and of the small tract to be run. He caused a warranty deed to be prepared conveying lot 16 to himself and Florence L. Pugh, his wife and co-defendant. He prepared a quitclaim deed for the small twenty by fifty foot parcel. He caused to be prepared a deed to a thirty-foot strip, extending from Fairview Avenue to the south boundary of lot

16, conveying the same to Marion County, Oregon, for highway purposes. He likewise prepared a letter relating to the consideration moving from the defendants to the grantor for the lands embraced in the roadway and in lot 16, but omitted to mention the conveyance of, or consideration for, the twenty by fifty foot tract. These papers were never submitted to plaintiff's agent, but were taken to the office of Carey F. Martin, an attorney of Salem, with directions from defendant David M. Pugh to transmit the same to this plaintiff to be executed by her. Beyond instructions relating to the method of executing the deeds, the Martin letter contains but little information other than the statement that "I do not know anything about this matter, but suppose that this is some agreement that you have with Mr. Pugh, and seems to be all right as far as I can see." Mr. Martin likewise inclosed a blue-print.

The letter prepared by defendant David M. Pugh reads:

"Salem, Oregon, February 25, 1924.
"Mrs. Margaret B. Blundell,
        "South 12th Street,
                "Salem, Oregon.
"Dear Madam:
"Regarding the new thirty-foot roadway running North from Fairview Avenue through your property we will, as a consideration for the deeding to us of Lot 16, Block 7, Morningside Addition, gravel the said roadway from end to end with such road gravel as is necessary to make a good road suitable for one-way traffic, and for one year after said graveling is completed we will add such gravel as is needed to keep the surface of the graveled part of the roadway in good repair."

Prior to plaintiff's receipt of the conveyances that had been prepared for her signature, she had received a letter from her agent, advising her to sign the paper or papers that would be forwarded to her in the State of California, where she was then visiting with her daughter. According to the agent's testimony, the papers which he advised her to sign had reference to the roadway. Relying upon the alleged representations of David M. Pugh that he would construct a roadway not only through her own premises, but through his own, whereby a highway would be established from Fairview Avenue to a street in Smith's Fruit Farm, and in the further belief that her son and agent had received other compensation for lot 16 and the twenty by fifty foot tract, the plaintiff executed the deeds and returned them to Mr. Martin. When, later, she ascertained that these conveyances had not been made as a result of negotiations with her son and business adviser, she sought to rescind the transaction.

That the plaintiff was acting without legal or other competent advice is clearly apparent. She executed the deed for lot 16 without any compensation whatsoever other than a promise to be performed in the future; and the contract relating to the performance contained no stipulation as to time, nor did the deed contain any provision for forfeiture in the event of nonperformance of the promised consideration. In and by the contract whereby he undertook to express the consideration to be paid for lot 16, Pugh agreed to gravel the roadway involved from end to end, i. e., "from Fairview Avenue, running north," to what point? Who knows where that northern terminus was? The plaintiff said the northern terminus was to be at the highway running through Smith's Fruit

Farm. The defendants, however, made the northern terminus at the south boundary line of lot 16.

That it was the intention of the plaintiff to convey the thirty-foot strip of land to Marion County for the purpose of public highway is conceded by all parties to this litigation. Doubtless it was her purpose, in conveying this strip, to secure a permanent road that would be kept up at public expense. Plaintiff desired the road, and the defendants were equally desirous of having the highway constructed, by reason of the improvement of their own property which would result from the establishment of a means of ingress and egress to and from the same. It is apparent that it was the intention of all parties that such a highway be constructed as would be acceptable to the county court.

The record shows that defendant David M. Pugh was to perform all acts necessary in order that the county court might accept the dedication of the tract for public road purposes. He testified, in effect, that he had it surveyed; that a deed was duly executed; that he took the deed to the county courthouse and delivered it to the county judge, who had a conversation with one of the county commissioners, and that it was then sent down to the clerk's office for record. There is no testimony, however, that the county court ever took any action for the purpose of making the dedication complete.

1. On the subject of dedication of public roads, 1 Roads and Streets, Elliott (3 ed.), Section 165, says:

"In order to make a dedication complete on the part of the public as well as the owner, and to charge the public corporation having jurisdiction over highways with the duty to repair the way, there must be an acceptance of the dedication by the public or the proper local authorities. The owner may, as a rule,

recall his dedication at any time before it has been accepted. Until there has been an acceptance the public cannot be charged with the duty of repairing, nor is there any liability for injuries caused by the defective or unsafe condition of the way. The acceptance must generally be made by representatives of the public having authority over highways, or by the public by general user of the way.''

This is a well-established principle of law.

2. The county court is a court of record, and it is possible that that court made a record expressly accepting the strip of land as a public highway. But there is nothing in the record before us that discloses either an express or implied acceptance of that land for and on behalf of the public, for road purposes.

Concerning her reason for executing the deeds, the plaintiff testified:

"Q. What do you mean by 'supposed it was all right'? A. I supposed that he (Percy Blundell) and Mr. Pugh had come to another agreement otherwise than we had ever went over and he had agreed to give Mr. Pugh this lot and this strip for the work done on the road.''

This excerpt shows that the plaintiff knew what land was to be conveyed, and that she believed the consideration for such conveyance to be the construction of the road. See Transcript, p. 127.

3. The record shows that Percy Blundell was present at the time of the survey of the road and that he took part in the grading thereof, and that he also knew that defendants had caused the lots described in the deeds in question to be surveyed. Nor is there any testimony in the record tending to show that the plaintiff did not know the identical property that was being transferred. She signed the deeds, and she does not claim that she was in any manner deceived

as to the contents of those instruments. On the contrary, the evidence shows that she clearly understood that she was conveying the title to lot 16 and the abutting tract to the defendants. Moreover, the letter addressed to her shows the consideration for lot 16.

In the case of *Finlayson* v. *Finlayson*, 17 Or. 347, 356 (11 Am. St. Rep. 836, 3 L. R. A. 801, 21 Pac. 57), this court said:

"Courts cannot relieve parties from imprudent bargains; they must suffer the consequences of their indiscretion, unless an undue advantage has been taken of them. Fraud will vitiate a contract; but where the parties to it stand upon an equality of footing, the fraud must consist of a false representation of a material fact, and the party to whom it is made not be able, by the exercise of reasonable caution and vigilance, to detect its falsity."

From the text of 9 C. J., page 1254, we take the following:

"The cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case and on strong and convincing evidence."

It appears, however, that defendants have partially failed to perform the services in road construction promised as a consideration for the execution of the deeds. The decree of the court below is modified, in this: Provided these defendants, by June 15, 1928, complete the graveling of the highway hereinbefore described, by laying a foundation of coarse gravel, and a layer of fine gravel on the top thereof, in such manner and in such quantities as will constitute a safe and passable highway as determined by the county roadmaster of Marion County, the plaintiff's prayer for cancellation will be denied. Should the defend-

ants fail so to complete the highway within the time stated, the decree appealed from will stand.

Neither party shall recover costs in this court.

MODIFIED.

RAND, C. J., and BEAN and ROSSMAN, JJ., concur.