Argued October 8; affirmed November 12; rehearing denied
December 16, 1930

## TUSI ET AL. *v.* JACOBSEN ET UX.

(293 P. 587, 939)

*J. O. Stearns* and *William M. Gregory* both of Portland for appellants.

*Alfred E. Clark* of Portland (Clark & Clark of Portland on the brief) for respondents.

BELT, J. Plaintiffs seek to enjoin defendants from using as a road a certain strip of land 30 feet wide off the north end of their land.

For some years prior to 1899, A. C. Fairchild owned approximately 100 acres of land lying just south of the boundary line between Multnomah and Clackamas counties, and east of what is now a prolongation of 92d street in the city of Portland, Oregon. On May 26, 1899, Fairchild deeded to Eva G. Crawford nine acres located in the northwest corner of the 100-acre tract. This abutted on the county line on the north and, on the west, upon the road which for convenience we will designate as 92d street.

In the deed to Mrs. Crawford the grantor made the following reservation:

"save and except thirty feet wide off the north end and thirty feet off the west side of the nine acres described herein, which thirty-foot strip is reserved for a road. Grantee agrees to open road on north line when present road is closed."

In 1906 Mrs. Crawford conveyed the property to Richard Meilke, omitting in the deed the words reserving the strip along the north side, but retaining the clause providing that the "grantee will open road on north line when present road is closed." In 1919 Meilke sold the tract to plaintiffs, the reservation being couched in the same terms as that in his own deed. In the

meantime, the "old road" had been abandoned and travel was opened up along the north line of plaintiffs' property, Mrs. Crawford having cleared a strip wide enough for a "wagon track" for that purpose.

In 1905 defendant John C. Jacobsen, by mesne conveyances, acquired the twenty-five-acre tract lying south and southeast of the nine-acre tract belonging to plaintiffs. The relative situations of these properties and the respective contentions of the parties may be more clearly understood by reference to the following plat:

Plaintiffs assert that no easement was granted to defendants by the above reservation and that they have acquired no prescriptive rights. They also contend that whatever rights, if any, defendants might have had to use this thirty-foot strip as a road were abandoned in 1926 when they agreed to the grading and improving of the fifteen-foot strip and to accept same in lieu of the easement reserved in the deed.

Defendants deny any abandonment and rely upon the easement described in the deed from Fairchild to Mrs. Crawford as being appurtenant to their land. They also allege such easement was acquired by prescriptive use.

The lower court decreed that defendants have an easement for a fifteen-foot roadway along the north line of plaintiffs' tract, but enjoined them from using or trespassing upon the remainder of the thirty-foot strip of land. Defendants appeal.

■■ An easement can be created only by a grant, express or implied, or by prescription from which a grant is presumed. In the instant case it was created by virtue of the deed in 1899 from A. C. Fairchild and wife to Eva G. Crawford. This roadway passed by subsequent conveyance of the nine-acre tract of land without express mention of the same: Thompson on Real Property, § 301. The easement was not a mere personal privilege or right of the Crawfords, but passed with the land.

■■ The vital question, however, is whether such easement is appurtenant to the land of the defendants. No reference to this thirty-foot roadway or description of it is contained in any of the deeds of defendants' predecessors in title. The original grantor did not

describe the land now owned by defendants nor make any reference to it. While some courts have adhered to the strict rule that the conveyance alone must show to what land the easement is appurtenant, the better and prevailing rule is thus stated in 9 R. C. L. 738:

"* * * an easement is appurtenant if so in fact, although not declared to be so in the deed, and that if the intention is not sufficiently expressed this question may be determined by the relation of the easement to the so-called dominant estate, or the absence of it, and in the light of all the circumstances under which the grant was made."

As stated in *Dennis v. Wilson,* 107 Mass. 591:

"When there is in the deed no declaration of the intention of the parties in regard to the nature of the way, it will be determined by its relation to other estates of the grantor, or its want of such relation."

True, *Wagner v. Hanna,* 39 Cal. 111 (99 Am. Dec. 354), held that whether an easement is appurtenant or in gross must be determined from the conveyance and not by matter aliunde. This case, however, was practically overruled by later decisions of the same court. In *Nay v. Bernard,* 40 Cal. App. 364 (180 P. 827), it was said:

"The principle established by *Hopper v. Barnes,* 113 Cal. 636 (45 P. 874), has been applied in a number of later cases, in all of which an easement conveyed by an express grant was held to have been appurtenant to a dominant tenement by reason of facts appearing aliunde the deed, and notwithstanding that no description of such dominant tenement was contained in the grant: *Jones v. Sanders,* 138 Cal. 405 (71 P. 506); *Jones v. Deardorff,* 4 Cal. App. 18 (87 P. 213); *Gardner v. San Gabriel Valley Bank,* 7 Cal. App. 106 (93 P. 900)."

Also to the same effect see *Eastman v. Piper,* 68 Cal. App. 554 (229 P. 1002), citing with approval the rule as above stated in R. C. L. In *Goldstein v. Raskin,* 271 Ill. 249 (111 N. E. 91), it was held that if the dominant estate was clearly made to appear by attendant circumstances it need not be described in the deed creating the easement. The precise question has not been decided in this jurisdiction but the cases of *Rall v. Purcell,* 131 Or. 19 (281 P. 832), and *Abraham v. Abbott,* 8 Or. 53, are somewhat analogous.

■ In keeping with what we deem to be the better rule, we look not only to the deed but to the facts and circumstances under which it was executed to ascertain the intention of the original grantor in the creation of this easement. What was the relation of the easement to the remaining part of the land owned by the grantor? Was it the purpose of Fairchild to limit the use of the roadway to the owner of the nine-acre tract? Or did he intend to provide means of access to the remainder of his land contiguous to the tract deeded to Eva G. Crawford? He well knew that such property would be of little value without means of ingress and egress. There was no need of providing a roadway on the north line of plaintiffs' land if the easement was intended to be appurtenant solely to such land. A right of way on the west, now known as 92d street, was sufficient. It was always used by plaintiffs in going to and from their property. The old road referred to in the Crawford deed, which way we believe was abandoned prior to the time defendants purchased the twenty-five-acre tract in 1905, was for many years used by people who lived to the east and south of the nine-acre tract of land. The old road entered defendants' land at the northeast corner thereof which is the

western terminus of the new road. The covenant that the "grantee agrees to open a road on north line when present road is closed" indicates clearly that Fairchild and his wife, the original grantors, contemplated that those who used the old road would, when the same was closed, use the road on the north line of plaintiffs' property. That defendants used the road on the north line for many years without objection tends to show the construction which the parties themselves placed upon the grant and supports the theory that the easement is appurtenant to the twenty-five-acre tract of land owned by defendants. Having concluded that the thirty-foot roadway is appurtenant to the defendants' land, it is not necessary to determine whether an easement has been acquired by prescription or adverse user.

We next inquire: Has such easement been extinguished by reason of any parol agreement of defendants? They deny having entered into any contract releasing their rights in the thirty-foot strip of land granted as a roadway, and assert further that, even if such be true, the agreement is null and void by reason of the statute of frauds. It is well established that an easement is an interest in land within the meaning of the statute of frauds: Thompson on Real Property, § 285. It, therefore, follows that there can be no extinguishment of the easement by parol agreement unless it has been so acted upon by the parties as to remove the bar of the statute. In 19 C. J. 949, it is said:

"It is elementary that oral testimony is not admissible to limit the legal effect of a deed, and that an easement can not be extinguished or released by a mere unexecuted parol agreement. Nevertheless, the rule is well settled that a parol agreement between the owners of the dominant and servient tenements

may operate to extinguish an easement whether created by grant or prescription, where such agreement has been executed by the owner of the servient tenement.''

If a parol agreement to extinguish or modify an easement has been fully performed and executed by the parties it is no longer within the operation of the satute: *Stueck v. Murphy Co.*, 107 Conn. 656 (142 Atl. 301). In 10 American and English Encyclopedia (2d Ed.), 432, it is said:

''It is a well-settled rule of law that an easement, whether acquired by grant or by prescription, may be extinguished, renounced or modified by a parol license granted by the owner of the dominant tenement and executed by the owner of the servient tenement.''

It remains to be determined whether the parties came to any agreement to modify the easement granted and, if so, whether such agreement was fully acted upon by them.

██ According to A. F. Webster, a witness for the plaintiffs, who was well acquainted with the property in question, travel began along the north line of the nine-acre tract in the ''nineties''—just a wagon trail cut through the brush. A gate was maintained at the western terminus of the roadway and upon it was posted ''No trespass.'' A fence was erected on each side of the thirty-foot strip of land. The fence on the south side of the road was much neglected and in later years was in a greatly dilapidated condition. Barbed wires were then fastened to trees and stumps to mark the southern boundary line of the fence. Mrs. Julia M. Harris, a witness for defendants, thus describes the roadway: ''On the north side of the road there was a very good barbed wire fence with solid posts, cedar, good solid posts; a well-built fence, a legal fence with a

board on it, and I think three or four barbed wires. I am not sure of the number, but a good legal fence on the north side. On the south side there was a fence that had been cut right in the timber and that was a straight fence through there with just enough clearing to put the fence through and two strips of barbed wire, and then the road meandered through the center."

No question arose as to the rights of defendants to use the road until 1926. Some parts of the road had grown up with hazel brush and undergrowth. Plaintiffs desired to improve the northern portion of their land and to erect a substantial fence along the southern boundary line of the road. Plaintiff Tusi said the road on the north line was first discussed with Jacobsen. "When we cleared up our land we were pretty close to the road and then I decided to go ahead and put in an expensive fence." Apparently Tusi did not want to put the fence in until he found out what Jacobsen claimed relative to his rights in the roadway. Jacobsen first said that he had a deed for twenty or twenty-five feet, whereupon Tusi said: "All you have to do is find that deed and show it to me and I will put the fence whatever the deed calls for." Some time elapsed and Jacobsen was unable to find anything in his chain of title referring to the roadway. Tusi said he asked Jacobsen, "What road do you want?" and he said, "I will take anything you give me." After some negotiations Tusi said it was finally agreed to give Jacobsen fifteen feet and he said, "That's all right with me." Arrangements were then made to improve and grade the fifteen-foot strip. Mr. Webster was employed with his team and plow to assist in the work. The following Sunday, Jacobsen, Tusi, D'Ascenzo and Webster commenced work. The parties mea-

sured south fifteen feet from the county line to mark the southern boundary line of the road. Stakes were put in on the southern line fifty feet apart to mark the direction of the road. Mr. Jacobsen assisted in putting down the stakes and in making the measurements. Furrows or ditches for drainage purposes were plowed on each side of the fifteen-foot strip. Stumps and other obstructions in the roadway were burned or removed. Jacobsen also assisted in tearing down the old fence which heretofore had marked the southern boundary line of the road. Some time later, the plaintiffs, without the knowledge or consent of the defendant Jacobsen, erected the new fence along the southern boundary line of the fifteen-foot strip. Relative to the prior negotiations as to width of the road, Jacobsen, the defendant, testified: "We first discussed twelve feet and I didn't think it was wide enough, especially for two vehicles to pass on one grade. I thought it would take at least fifteen feet." He does not deny having helped in the work of improving and grading the roadway, but says he did not know anything about the erection of the fence until advised in 1927 by his tenant, Mrs. Student. Concerning the alleged agreement to modify the easement, Jacobsen testified, referring to the original line of the fence: "That continued until October, 1926, when Mr. Tusi came to me at one time and he said, "Let's clean this up. I would like to make my place look nicer. It is bad with a lot of brush in there; so let's clean it up and grade a road and make a nice, straight road out of it." And so we agreed on that. There was something about fifteen feet, but I thought that referred to the grade that was to be made. That it was to be graded fifteen feet wide. I had no intention of narrowing the road at all."

It would greatly extend this opinion to recite further the evidence concerning the question of the alleged agreement, but we are convinced that Jacobsen, being uncertain of his right in the roadway, agreed to accept one fifteen feet wide and that the parties actually carried out their agreement by constructing a road of that width. Jacobsen's contention that he thought the fifteen feet referred to the grade and that he had no intention of narrowing the road is highly improbable. If the fifteen feet pertained merely to the width of the grade of the road, why did they commence measurement on the north line? If there was no intention of narrowing the road and the graded part was to be fifteen feet wide, measurements would have been made to leave a strip seven and one-half feet wide on each side of the graded portion of the roadway. There cannot be any question about Jacobsen's knowledge of the boundary lines of the thirty-foot strip for the reason that he helped take down the old fence on the southern line. In fact, he makes no contention that he was not aware of the boundary lines of the thirty-foot strip. We have then the decisive and conclusive acts of Jacobsen indicating an intention on his part to renounce his interest in the roadway aside from the fifteen-foot strip. Courts should be and are reluctant to disturb agreements fairly made in settlement of controversial rights.

The decree of the trial court enjoining the defendants from trespassing upon the land of the plaintiffs other than the fifteen-foot roadway fixed by agreement of the parties is affirmed. It is deemed equitable that neither party recover costs or disbursements.

RAND, ROSSMAN and KELLY, JJ., concur.

Petition for rehearing denied December 16, 1930

ON PETITION FOR REHEARING

(293 P. 939)

BELT, J.   Appellants earnestly urge that the 30-foot strip was dedicated by Fairchild and his wife as a public highway and, therefore, any agreement between the parties to reduce the width of the roadway to 15 feet would be of no force or effect.  The fallacy of this contention is that the record does not disclose a positive and unequivocal intention to make such dedication.  Neither was there any express or implied acceptance of the road as a public highway by the county court.  *Blundell v. Pugh,* 123 Or. 563 (263 P. 75).  A gate, upon which was posted a "no trespass" sign, was maintained at the eastern terminus of the road.  In the original opinion we inadvertently said this notice was posted at the western terminus of the road.  A further review of the evidence convinces us that the defendants entered into a parol agreement to modify the easement granted.

The petition for rehearing is denied.

RAND, ROSSMAN and KELLY, JJ., concur.