No. 850          October 1, 2025          683

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Brian HUMPHREYS
and Sara Humphreys,
*Plaintiffs-Respondents,*

*v.*

Robert HULS
and Racquel Huls, individually and as Trustees for the
RA Huls and RA Ventura-Huls Family Trust;
Frank J. Folino; and Angelica S. Calderon,
*Defendants-Appellants,*

*and*

Randy ONYSKO et al.,
*Defendants.*

Lane County Circuit Court
20CV17274; A180139

Karrie K. McIntyre, Judge.

Argued and submitted December 4, 2024.

D. Rahn Hostettter argued the cause for appellants. Also on the opening brief was Hostetter Law Group, LLP. Also on the reply brief was Benjamin Boyd.

Erin E. Gould argued the cause for respondents. Also on the brief was Erin E. Gould, LLC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

## AOYAGI, P. J.

Leroy and Marlene Boehm (the Boehms) owned approximately 20 acres of rural land in Lane County. Over time, they divided it through a series of property line adjustments and partitions, ultimately resulting in four tracts, all of which they eventually sold. Along the way, the Boehms filed documents purporting to create access easements for existing and future tracts. The present litigation is an easement dispute among the Boehms' successors, including plaintiffs Brian and Sara Humphreys and defendants Robert and Raquel Huls, John and Cynthia Koza, Frank Folino and Angelica Calderon, and Randy and Mary Onysko. Only the Hulses, Folino, and Calderon appear on appeal, so, going forward, we use "defendants" to refer only to them.[1]

Plaintiffs brought claims seeking a declaration that their property is benefited by an access easement meeting Stephens Road, as well as nuisance damages and an injunction. Defendants responded with various affirmative defenses and counterclaims. The equitable claims were tried to the court, and the legal claims were tried to a jury, after which a judgment was entered in plaintiffs' favor on all claims.

Defendants appeal, raising six assignments of error. We begin and end our analysis with the first assignment of error, in which defendants challenge the trial court's ruling that plaintiffs have an express easement over the Hulses' property, as it is dispositive. We agree that the trial court erred in that regard. That conclusion requires reversal of the judgment and remand for further proceedings consistent with this opinion, including revisiting other claims and counterclaims affected by the erroneous express easement ruling. Accordingly, we reverse and remand.

## I.   FACTS

We limit our discussion to the key facts, which are undisputed. The Boehms bought an approximately 20-acre parcel in the 1970s. At some point, they divided the southernmost four acres into a separate tract, which we call tract

---

[1] The Hulses sold their property to the Kozas during this litigation. For ease of reference, we continue to refer to that parcel as the Hulses' property.

D, and transferred that tract into joint ownership with their
son and his wife. Then, in 2004, they divided the northern
16-acre parcel into two tracts: a rectangular tract contain-
ing the existing house and barn, which we refer to as tract
B, and a tract consisting of two roughly rectangular areas
connected by a very long 30-foot-wide strip, which we refer
to as tract AC. Tract AC would later be partitioned into two
parcels, A and C, but, in 2004, it was a single tract. For ease
of reference, we provide the following sketch, adapted from
an exhibit and labeled to show how the 20 acres were ulti-
mately divided into four parcels:



        In December 2004, when there were a total of three
tracts—tract AC (which included the areas marked A and C
above), tract B, and tract D—the Boehms and their son and
his wife executed and recorded a "Declaration of Private

Access Easement." The declaration recites, "This private access easement is being prepared to allow access to [tract B] across [tract AC] and [tract D] from Stephens Road." That purpose is also reiterated in a later provision: "The purpose of this easement is to allow ingress and egress across [tracts AC and D] to serve [tract B]." The location of the described easement, which was to run with the land, is indicated in hashmarks on the above sketch.

A few months later, in March 2005, the Boehms and their son and his wife executed and recorded another "Declaration of Private Access Easement." Its recitals include that the Boehms "are in the process of partitioning" tract AC into two parcels, one of which will be a five-acre parcel (parcel A), and that "[t]his private access easement is being prepared to allow access to the future [parcel A] across [tract B] and [future parcel C] and [tract D]." The location of the described easement, which was to run with the land, is the same as that in the December 2004 easement.

It should be noted that the described easement includes the easternmost 10 feet of tract B. Due to terrain, the 30-foot-wide strip of land in the middle of tract AC would not provide vehicle access on its own.

In January 2006, the Boehms sold tract B to the Hulses. The deed does not mention any easements, referring only generally to the chain of title. It states, "This property is free from encumbrances, EXCEPT: All those items of record, if any, as of the date of this deed, including any real estate taxes due, but not yet payable."

In 2011, the Boehms divided tract AC into two parcels, A and C, through a partition plat. Parcel A consists of the upper rectangle of what used to be tract AC, plus the 30-foot-wide strip lying east of tract B, and parcel C consists of the lower portion of what used to be tract AC. Leroy Boehm died in 2015. Marlene Boehm then sold parcel A to plaintiffs, transferring the property by deed recorded in 2016.

Plaintiffs sought a declaration that they have an express easement over tract B, parcel C, and tract D to access

their property from Stephens Road.[2] The trial court agreed with plaintiffs and issued the requested declaration. The court rejected most of defendants' affirmative defenses and counterclaims, except the nuisance counterclaims. The nuisance counterclaims, along with plaintiffs' nuisance claim, were tried to a jury, which was instructed that plaintiffs have a valid easement, and, so instructed, the jury found for plaintiffs on all of those claims.

## II.   ANALYSIS

Defendants the Hulses contend that the trial court erred in ruling that plaintiffs (as owners of parcel A) have an express easement over the Hulses' property (tract B). They argue that the 2004 declaration does not create such an easement, because it expressly creates only an easement benefitting tract B, and that the 2005 declaration created an invalid easement, because the burdened and benefitted estates were in common ownership at the time. Plaintiffs defend the court's rulings. Because the court rendered its decision following a bench trial, and we understand defendants to accept the court's factual findings but challenge its application of the law, we review for legal error. *Pistol Resources, LLC v. McNeely*, 312 Or App 627, 629, 496 P3d 28 (2021).

### A.   *2004 Declaration*

"An easement is created by grant or reservation, express or implied, or by prescription from which a grant is presumed." *Bloomfield v. Weakland*, 224 Or App 433, 445, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009) (citing *Tusi v. Jacobsen*, 134 Or 505, 508, 293 P 587, *reh'g den*, 134 Or 505 (1930)). An express easement—the only type of easement at issue here—"is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement." *Id.*; *see also Farnsworth v. Meadowland Ranches, Inc.*, 321 Or App 814, 821, 519 P3d 153 (2022) ("In interpreting a deed, our objective is to ascertain the meaning that most likely was intended by the parties who entered into it." (Internal quotation marks and brackets omitted.)).

---

[2] We note that there is access to parcel A from a different direction, using an easement that the Boehms secured from a neighbor. That easement is not at issue.

To determine whether an instrument creates an express easement, we follow our well-established method of interpretation: "We look first to the language of the instrument itself and consider its text in the context of the document as a whole." *Bloomfield*, 224 Or App at 447 (citing *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997)). In reading the text, we place ourselves in the position of the parties, which is to say that we consider the circumstances surrounding the execution of the instrument. *Id.* From that vantage, "[i]f the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law." *Id.*

We agree with defendants that the 2004 declaration unambiguously creates an easement only for the benefit of tract B. The declaration recites that its purpose is "to allow access to [tract B] across [tract AC] and [tract D] from Stephens Road" and later reiterates in the body that its purpose "is to allow ingress and egress across [tracts AC and D] to serve [tract B]." In its letter opinion, the trial court took the view that the 2004 declaration grants an easement across tracts AC and B for the benefit of tract D and a reciprocal easement across tract D for the benefit of tracts AC and B, thus creating "a valid and express easement appurtenant to all three named tracts/parcels." We disagree. The 2004 declaration unambiguously states its purpose as being only to benefit tract B with an easement burdening tracts AC and D.

The trial court found, based on Marlene Boehm's testimony, that the 2004 declaration was "intended to permit access to all portions of the property *** through the Stephens Road access." But a party's testimony cannot be used to vary the unambiguous terms of the actual recorded instrument. As succinctly put in *Weniger v. Ripley*, 134 Or 265, 276, 293 P 425 (1930), "[I]n construing a deed the court endeavors to ascertain the intention of the parties; but the intention sought is the one expressed in the deed and not some secret unexpressed intention which the parties refrained from incorporating within the instrument of conveyance." Even if the 2004 declaration did not accomplish the Boehms' subjective goals, the text is unambiguous and therefore conclusive. *Bloomfield*, 224 Or App at 447.

The trial court erred in concluding that the 2004 declaration created an express easement burdening tract B and benefiting parcel A.

B.  *2005 Declaration*

We now turn to the 2005 declaration, which was recorded before the partition of tract AC, and which purports to create an easement over tract B, future parcel C, and tract D, for the benefit of future parcel A. Unlike the 2004 declaration, the 2005 declaration *does* purport to create an easement for the benefit of plaintiffs' parcel. However, as explained below, we conclude that it too fails to do so.

One inherent characteristic of an easement is that it transfers an interest in property from one party to another. "An easement is a right in one person to do certain acts on land of another." *Bloomfield*, 224 Or App at 445 (citing *German Savings & Loan Soc. v. Gordon*, 54 Or 147, 150, 102 P 736 (1909)). Consequently, it is impossible to create an easement running between two properties in common ownership, as such an encumbrance "lacks a characteristic fundamental to easements—it provides no interest in 'land of another.'" *Partney v. Russell*, 304 Or App 679, 692, 469 P3d 756 (2020) (quoting *7455 Incorporated v. Tuala West LLC*, 274 Or App 833, 840, 362 P3d 1179 (2015)). A document purporting to create such an easement is invalid. *Id.*; *see also DeJardin v. Bonfiglio*, 340 Or App 619, 622, 572 P3d 1106 (2025) ("[A] declaration that purports to grant an easement in one's own land is invalid, on its own."). The doctrine of merger similarly provides that when parcels previously in separate ownership come into common ownership, any easements running between them are immediately extinguished, even if they remain in the deed record. *Witt v. Reavis*, 284 Or 503, 508, 587 P2d 1005 (1978).

Of course, even if an easement is invalid when created, or is extinguished at some point, the same easement may be validly created or recreated in a later conveyance—but the intent to do so must be clear. *See Bloomfield*, 224 Or App at 445 (an express easement "is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an

easement"). In *Faulconer v. Williams*, 327 Or 381, 964 P2d 246 (1998), an easement was extinguished by adverse possession, but later deeds continued to reference it. The court explained that "once an easement is extinguished, it is gone forever." *Id.* at 394-95. That is, "it cannot be revived, only recreated." *Partney*, 304 Or App at 690 (discussing *Faulconer*). And a "mere later reference" to an extinguished easement "does not in itself recreate the easement." *Faulconer*, 327 Or at 395. Instead, the later deed, on its face or read in the context of the circumstances of its execution, must clearly evince the grantor's intent to "recreate the easement *de novo*." *Id.* The later deeds in *Faulconer* merely referenced the extinguished easement, which was not enough to recreate it. *Id.* at 395-96.

We recognized in *Partney* that the same principle applies to invalidly created easements as extinguished easements. *Partney*, 304 Or App at 691-92. *Partney* involved a recorded declaration that failed to create a valid easement because the properties were in common ownership. *Id.* at 692. Under such circumstances, "even if the declaration is intended to define the scope of an easement—and even if it is recorded—the declaration itself does not establish the easement; only subsequent conveyances made in reference to the declaration can have that effect." *Id.* Of course, as with any express easement, the language of the conveyance instrument itself must be sufficiently clear to establish the grantor's intent to *create* the easement. *Bloomfield*, 224 Or App at 445.

*Lute* illustrates how a recorded document that does not itself create a valid easement may be used in a later deed to create one. *Lute v. Cascadia Tower Inc.*, 336 Or App 155, 561 P3d 112 (2024). In April 2015, in anticipation of selling a piece of real property, the defendant in *Lute* recorded an easement in gross for its own benefit, which purported to allow it to install, construct, and operate a cell tower on one corner of the property, along with an access easement to travel to and from the cell tower. *Id.* at 156. In June 2015, the defendant sold the real property to the Bodtkers, via a warranty deed that conveyed it subject to the easement described in the April 2015 recording. *Id.* at 158. The deed expressly stated that the property was conveyed free from

encumbrances *except* those specifically set forth in Exhibit A to the deed, and Exhibit A listed "the April 2015 recorded easement document, noting the purpose, recording date, and record number of that document." *Id*. Assuming that the 2015 declaration did not create a valid easement, given the common ownership at that time, we concluded that the June 2015 deed created one. *Id*. at 158. The express language of the deed, read in the context of the circumstances surrounding its execution, made clear that it was intended to convey the property subject to a cell tower easement. *Id*.[3]

*Lute* demonstrates that it is possible to create a valid express easement by executing a deed that expressly references and incorporates an earlier recording in a way that makes clear that the grantor intends to convey the property subject to such an easement—even if the prior recording itself did not create a valid easement. It is important to note, however, that it is the later deed that creates the easement, not the earlier recording, and that merely referencing a prior recording in a later deed will not necessarily create a valid easement if one does not already exist. There is thus some inherent risk in recording an easement while property is in common ownership, in anticipation of future events, because such an easement is invalid at creation, and additional steps must be taken in the future to actually create a valid easement at the time of property transfer.[4]

---

[3] *See also DeJardin*, 340 Or App at 620-21, 623 (holding that the plaintiff took property subject to a view restriction, even though the property transfer and the restriction were recorded in separate documents, where the sellers notified the plaintiff of the intended restriction before the sale, the document creating the restriction was recorded on the same day as the deed, and the restriction was mentioned in the closing statement).

[4] We note that there are special rules for new towns and subdivisions. Longstanding Oregon case law provides that when a developer "sells lots with clear reference" to a plat or plan laying out a town "with spare ground marked as streets, alleys, public squares or parks," "the purchasers of the lots acquire as appurtenant thereto every easement, privilege, and advantage which the plan or map represents as part of the town." *Carter v. City of Portland*, 4 Or 339, 346 (1873). The same is true for subdivision plats. *Bloomfield*, 224 Or App at 446. *Partney* discusses a Restatement section addressing a similar principle relevant to a "general-plan development"—although we note that that portion of *Partney* is dicta. *See Partney*, 304 Or App at 692-93, 695 (discussing *Restatement (Third) of Property: Servitudes*, § 2.1(1) (2000), as potentially relevant, but ultimately "not consider[ing]" whether or how it might apply, given the arguments made on appeal); *see also Restatement* § 1.7 (defining "general-plan development"). Plaintiffs do not suggest that that Restatement provision has any application here.

With those principles in mind, we return to the present case. When the 2005 declaration was recorded, the Boehms owned tract AC, which had not yet been partitioned, and tract B, and they jointly owned tract D with their son and his wife. The 2005 declaration purports to grant an express easement over tract B, future parcel C, and tract D, for the benefit of future parcel A. We readily conclude that the 2005 declaration did not create a valid easement over tract B for the benefit of future parcel A. Because the burdened and benefitted estates were in common ownership, the easement that the declaration purported to create was necessarily invalid. *Partney*, 304 Or App at 692 (explaining that a recorded easement purporting to burden one property for the benefit of another is invalid if the properties are in common ownership at the time of the recording).

The trial court viewed *Partney* as distinguishable because the 2005 declaration affected tract D, which the Boehms owned jointly with their son and his wife, whereas they owned tracts AC and B on their own. That is, the trial court concluded that tract D was not in entirely common ownership with tracts B and AC, that the declaration therefore created a valid easement as to tract D, and that all easements created by the declaration were therefore valid. We are unpersuaded that *Partney* is distinguishable on that basis. Assuming without deciding that the easement burdening tract D for the benefit of future parcel A is valid, it does not follow that the easement burdening tract B for the benefit of future parcel A is valid. Plaintiff has not identified, and we are not aware of, any authority that an otherwise invalid easement may be rendered valid by simply including it in an instrument that creates a valid easement burdening a different property. Absent such authority, we are unpersuaded.

The only remaining question is whether the 2006 deed conveying tract B from the Boehms to the Hulses managed to create the easement that the 2005 declaration described but failed to create. It did not. The 2006 deed does not mention any easements, let alone expressly call out the 2005 declaration. It contains only a generic reference to the chain of title, stating, "This property is free from

encumbrances, EXCEPT: All those items of record, if any, as of the date of this deed, including any real estate taxes due, but not yet payable." Such language is insufficient to create an express easement. *See Faulconer*, 397 Or at 395 (to recreate an extinguished or invalid easement, the later deed, read in the context of the circumstances of its execution, must clearly evince the grantor's intent to "recreate the easement *de novo*"). It does not make clear, like the deed in *Lute* did, that the grantor intended to transfer the property subject to an express easement described in a recent separate recording, even if that separate recording did not itself create a valid express easement. If merely referencing a previously recorded document is insufficient to create a valid express easement, as *Faulconer* holds, then merely referencing the chain of title in general terms is certainly insufficient to create a valid express easement.

Accordingly, the trial court erred in ruling that an express easement burdens tract B (the Hulses' property) for the benefit of parcel A (plaintiffs' property). We reverse and remand for further proceedings on the remaining claims and counterclaims and, ultimately, for entry of a judgment containing declarations consistent with this opinion.

Reversed and remanded.