540 May 13, 2026 No. 407

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Hunter MOORE
and Michelle Moore, husband and wife,
*Plaintiffs-Appellants,*

*v.*

Ned GRABAVOY
and Monica Grabavoy, husband and wife,
*Defendants-Respondents.*

Clackamas County Circuit Court
24CV20416; A186755

Robert T. Manicke, Judge.

Argued and submitted April 7, 2026.

Zack P. Mittge argued the cause for appellants. Also on the briefs were Frank C. Gibson and Hutchinson Cox.

David A. Rabbino argued the cause for respondents. Also on the brief were Robyn L. Stein, David H. Bowser, and Jordan Ramis, PC.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In this easement dispute between neighbors, plaintiffs appeal a declaratory general judgment following the grant of summary judgment to defendants. Plaintiffs sought a declaration that an easement was invalid as to their home and their neighbor's home because at the time of the easement's recording, the parcels of land were held by a common owner and the subsequent conveyance did not create a valid easement. The parties both moved for summary judgment. The court granted defendants' motion, reasoning that a valid express easement was created at the time plaintiffs bought their home and entered a declaratory judgment in favor of defendants. On appeal, plaintiffs assign error to the trial court's order granting defendants' motion for summary judgment, arguing that the trial court erred in declaring the existence of a valid easement. We conclude that the trial court did not err because the express language of the easement recording and subsequent conveyance, as well as the surrounding circumstances, indicate that the parties intended the creation of an easement. Accordingly, we affirm.

Because the facts are not disputed, we review the trial court's ruling on the cross-motions for summary judgment for errors of law to determine whether either party is entitled to prevail as a matter of law. ORCP 47 C; *Lockner v. Farmers Ins. Co. of Oregon*, 333 Or App 27, 28, 551 P3d 975, *rev den*, 373 Or 154 (2024).

Between November 2015 and May 2016, a developer named Blue Palouse Properties, LLC purchased two pieces of adjacent real property on Upper Drive in Lake Oswego. The first property, located at 4176 Upper Drive (property A) is a flag pole lot with driveway running 165 feet to connect the home with the street. The second property, located at 4200 Upper Drive (property B), is narrower than the widest part of property A.



As part of its development of the properties, Blue Palouse demolished the existing home on property B.[1] Blue Palouse then built a three-car garage on property B and connected it, via a paved driveway, to the driveway on property A. By the time Blue Palouse finished its work, property B's sole paved entry and exit point was the driveway on property A.

In May 2016, in preparation for selling its properties, Blue Palouse drafted, executed, and recorded a document titled "Easement Agreement." That document purported to grant the owner, and all future owners, of property B an express easement over all of property A's driveway—not just the portion used to connect it to property B—for "ingress, egress, utilities, and storm water management," in perpetuity. On the document, Blue Palouse listed itself as both the "Grantor" and "Grantee" of the easement. Blue Palouse's stated intention in creating and recording the document was to create an express easement over property A, for the benefit of property B.[2] The document included the following illustration of the easement:

---

[1]  Blue Palouse also remodeled the existing home on property A.

[2]  Blue Palouse also expressed that it was motivated to create a formal easement memorializing the single driveway access by Lake Oswego's policy to limit



Blue Palouse then prepared to sell the properties. In November 2016, it sold property A, the property burdened by the easement, to plaintiffs, and it sold property B, the property benefitted by the easement, to defendants. Both deeds contained language that the property was "Subject to and excepting: Covenants, Conditions, Restrictions and Easements of record." Prior to the sale to plaintiffs, Blue Palouse's real estate broker emailed plaintiff's broker a counteroffer, in which she referred to "easement work that ha[d] already been done." In Blue Palouse's seller's property disclosure to plaintiffs, it also answered "Yes," in a section on "Title," to the question, "Are there any agreements for joint maintenance of an easement or right of way," but answered "No," to the question, "Are there any rights of way, easements, licenses, access limitations or claims that may affect your interest in the property?" Finally, plaintiffs received a copy of the Easement Agreement at or near their closing. However, aside from referencing "easements of record," the deed did not expressly reference the Easement Agreement that had been previously recorded. Blue Palouse also did not discuss the driveway easement with plaintiffs directly.

In 2023, plaintiffs sent defendants a letter in which they acknowledged an easement on their property for ingress

---

access to Upper Drive, to facilitate and improve fire access to both properties, and to manage runoff for both properties.

and egress. In that letter, plaintiffs extended "a formal offer" to allow defendants to use "[a] portion of the driveway easement" for defendants' kids to play—a use that was not originally contemplated by the Easement Agreement. Plaintiffs also expressed concern that, due to how Blue Palouse landscaped the driveway, defendants were misled "that [they] were] entitled to full use of [plaintiffs'] property as if it were [their] own."

In 2024, plaintiffs filed the instant action. Plaintiffs sought a declaratory judgment that the Easement Agreement, which they refer to as a "purported easement," was invalid.[3] Plaintiffs argued that "the purported easement never came into existence due to Blue Palouse's unity of ownership of [the properties] at the time of its creation, and due to the failure of Blue Palouse to make either an express reservation thereof in Plaintiffs' deed or an express grant thereof in Defendants' deed."

Defendants, in their answer to plaintiffs, filed two counterclaims. The first counterclaim sought a declaratory judgment that the existing easement was valid and enforceable as an express easement. The second counterclaim, alternatively, sought a declaratory judgment that the easement was created as an implied easement. The parties made cross-motions for summary judgment, and the trial court granted defendants' motion on their express easement counterclaim. The court entered a declaratory general judgment on that basis on the same day. This appeal followed.

On appeal, plaintiffs assert two arguments as to why the trial court erred in declaring that a valid easement

---

[3] Specifically, plaintiffs sought the following relief:

"A. For a declaration under ORS 28.010, *et seq.*, that:

"1. The purported easement does not constitute a valid servitude upon any portion of Plaintiffs' property.

"2. Defendants have no right to use the purported easement area for ingress, egress, utilities, stormwater management, or to go upon any portion of Plaintiffs' property for any other purpose without Plaintiffs' express permission to do so.

"B. By way of supplemental relief under ORS 28.080, for a mandatory injunction requiring Defendants to remove from Plaintiffs' property the concrete sidewalk, landscaping, drywell, and the aggregate vehicular entrance to Defendants' garage."

existed. First, plaintiffs contend that an easement could not have been expressly created through the Easement Agreement when both the benefitted and burdened properties were held by a single owner, which meant that the agreement did not create a non-possessory interest in the land "of another." *See Humphreys v. Huls*, 343 Or App 683, 690, 580 P3d 906 (2025), *rev den*, 374 Or 698 (2026) ("One inherent characteristic of an easement is that it transfers an interest in property from one party to another."). Second, plaintiffs argue that the language from the deed was insufficiently clear to create an easement. *See Bloomfield v. Weakland*, 224 Or App 433, 445, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009) ("An express easement is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement."). Defendants respond that the language and circumstances were sufficiently clear to create an express easement.[4] For the reasons that follow, we agree with defendants.

We begin with a discussion of the relevant law as it relates to easement creation. Plaintiffs are correct that a "fundamental" characteristic of easements is that they must provide interest in the "land of another." *Partney v. Russell*, 304 Or App 679, 692, 469 P3d 756 (2020). For that reason, "it is impossible to create an easement running between two properties in common ownership" and "[a] document purporting to create such an easement is invalid." *Humphreys*, 343 Or App at 690; *see also DeJardin v. Bonfiglio*, 340 Or App 619, 622, 572 P3d 1106 (2025) ("[A] declaration that purports to grant an easement in one's own land is invalid, on its own."). To that end, we easily conclude that the Easement Agreement in this case, on its own, did not create an easement: Blue Palouse owned both properties at the time it recorded its agreement, thus no easement could form.

But the sidewalk does not end there. "[E]ven if an easement is invalid when created, * * * the same easement may be validly created or recreated in a later conveyance," so long as the intent to do so is "sufficiently clear." *Humphreys*, 343 Or App at 690-91. That "later conveyance" may reflect

---

[4] Defendants also argue, in the alternative, that an implied easement was created. Our disposition obviates the need to address that argument.

the intent of the parties to create an easement on its face, or the intent may be inferred from the surrounding circumstances. *Lute v. Cascadia Tower Inc.*, 336 Or App 155, 157, 561 P3d 112 (2024), *rev den*, 373 Or 284 (2025) ("That intent may appear on the face of the deed itself but may also be inferred from the circumstances surrounding the deed, including through reference to other recorded documents."); *see also Faulconer v. Williams*, 327 Or 381, 395, 964 P2d 246 (1998) ("[A]n appurtenant easement may be created in favor of a third party to a transaction, so long as the grantor's intention to impose the servitude is apparent either from the face of the deed or from the surrounding circumstances.").

That intent is readily apparent from the deed and surrounding circumstances here. "In interpreting a deed, our objective is to ascertain the meaning that most likely was intended by the parties who entered into it." *Lute*, 336 Or App at 157. Here, plaintiffs' deed expressly referenced that it was subject to easements of record. Blue Palouse had recently recorded the easement at issue. Moreover, the surrounding circumstances all point to Blue Palouse's intent to convey property to plaintiffs burdened by an easement outlined in the Easement Agreement. Those circumstances include Blue Palouse purchasing the adjacent parcels in order to develop them and sell them, Blue Palouse creating and recording the easement, the construction of the three-car garage on defendants' property requiring the use of the driveway on plaintiff's property, the construction of the driveway connecting the lots, emails with plaintiffs' real estate broker discussing the easement, the seller's disclosure that disclosed easement maintenance, and emails from Blue Palouse about the creation of the easement.[5]

Those circumstances are what distinguish this case from *Humphreys*. In *Humphreys*, a common owner attempted to create an easement over portions of their property before dividing it into separate parcels. 343 Or App at 686-87. The owner first recorded a "Declaration of Private Access

---

[5] We recognize that circumstances surrounding the transfer of real property may not appear in the deed record and sometimes are not ascertainable to later purchasers, which may present practical challenges for determining whether an easement exists. However, we understand the Supreme Court to have endorsed that approach in *Faulconer*, 327 Or at 394-96.

Easement" (2004 declaration). *Id.* The declaration recited that an easement was being prepared to benefit a portion of the owner's land (parcel B) by granting it access over other portions of the owner's land. A few months later, in 2005, the owners executed and recorded another "Declaration of Private Access Easement" (2005 declaration). In that declaration, the owners recited that they were "in the process of partitioning" the land and that the private access easement was "being prepared" to allow access to a future parcel (parcel A) over other burdened parcels, including parcel B. *Id.* (internal quotation marks omitted). The owners later sold parcel B to the defendants by deed. *Id.* The deed stated, "This property is free from encumbrances, EXCEPT: All those items of record, *if any*, as of the date of this deed, including any real estate taxes due, but not yet payable." *Id.* (emphasis added; internal quotation marks omitted). Five years later, the owners divided their property further, finally creating parcel A. *Id.* at 687. Five years after that, the owners sold parcel A to the Humphreys. *Id.* The Humphreys sought a declaration that they had an express easement over the other burdened parcels, including parcel B. *Id.* at 687-88. The Humphreys argued that the language and circumstances around the 2004 declaration, 2005 declaration, and deed all supported the creation of an express easement benefitting parcel A and burdening parcel B. *Id.* at 688. We concluded that the language in the deed conveying parcel B was "insufficient to create an express easement" benefitting the Humphreys's land, because it contained merely a "generic reference to the chain of title," and did not "mention any easements, let alone expressly call out the 2005 declaration." *Id.* at 693-94. Additionally, the language of the 2004 declaration—the one that *benefitted* parcel B—was unambiguous in its intent to benefit parcel B and could not be construed to burden that parcel. *Id.* at 689 ("[A] party's testimony cannot be used to vary the unambiguous terms of the actual recorded instrument.").

Nor did the circumstances surrounding the attempted creation of the easement in *Humphreys*, or the later conveyance of the property, clarify the grantors' intent. The owners there first recorded an unambiguous declaration benefitting parcel B, then recorded a declaration purporting to create an easement for themselves, for a future parcel A that did not yet

even exist. Then, five years later, they divided their property to create the parcel in the declaration. Then, five years after *that*, they sold the parcel to a future buyer. The declaration was unclear as to whether the owners wanted an easement created in perpetuity, for future owners, or were merely trying to hold onto it themselves. Here, by contrast, the recorded easement agreement was unambiguous as to Blue Palouse's intent to create an easement benefitting defendants' property and burdening plaintiffs'; the deed from Blue Palouse mentioned it was subject to *easements* of record; the seller's disclosure referred to easement maintenance; the easement agreement was recorded in direct preparation for selling the properties; and the layout of the adjacent homes demonstrate sufficient intent for creation of an express easement.

In arguing otherwise, plaintiffs assert that a deed with a "mere later reference" to an easement, which they contend this deed is, cannot create an express easement. We agree, up to a point. A deed with a "mere later reference" to an invalidly created easement is typically insufficient to recreate an easement that has been *extinguished*. *See Faulconer*, 327 Or at 395-96 (easement extinguished by adverse possession not recreated by later deeds that continued to merely reference it). Once an easement has been extinguished, it is gone forever. *Id*. A mere later reference to an easement that has been permanently erased would be insufficient to resurrect it. By contrast, a deed that expressly references a specific recorded easement that has yet to come into being will almost always be sufficient to create such an easement. *See Lute*, 336 Or App at 158 (deed that expressly cross-referenced an exhibit that listed a recorded easement that had not yet come into being, "noting the purpose, recording date, and record number of that document," sufficient to create such an easement).

*Lute* is a good example of clear language in a deed that is sufficient to create an express easement from a previously recorded easement. In *Lute*, the defendant recorded an easement, which purported to allow it to install, construct, and operate a cell tower on one corner of its property, along with an access easement to travel to and from the cell tower. *Id*. at 156. The defendant then sold the real property to another party, via a warranty deed that stated that the

property was being conveyed subject to "Exhibit A": a portion of the deed that listed the previously recorded easement document. *Id.* at 158. We concluded that the conveyance served to create the easement in Exhibit A: The express language of the deed, read in the context of the circumstances surrounding its execution, made clear that it was intended to convey the property subject to a cell tower easement. *Id.*

Here, similarly, defendant recorded an easement. Defendant then sold the burdened property to another party, with the expectation that it be conveyed subject to an easement. The deed used to convey the burdened property stated that the property was being conveyed subject to easements of record. Given those circumstances, an express easement was created.[6]

In the end, this case illustrates the "inherent risk" in attempting to create an express easement when the creator owns both the benefitted and burdened parcels of land. *See Humphreys*, 343 Or App at 692 ("There is thus some inherent risk in recording an easement while property is in common ownership, in anticipation of future events, because such an easement is invalid at creation, and additional steps must be taken in the future to actually create a valid easement at the time of property transfer."). Parties wishing to avoid that risk—and spare years of costly litigation—would be well-advised to document any servitudes clearly in the deed itself. Although this would have been a less complex case had Blue Palouse used clearer language in its conveyance to "expressly call out" its servitude, ultimately, the language it did use, combined with the surrounding circumstances, is sufficient to demonstrate its intent for an express easement on plaintiffs' property, for the benefit of defendants, subject to the terms of the "Easement Agreement."

Affirmed.

---

[6] There are two circumstances that appear to favor plaintiffs: the seller's disclosure that answered "No" to the question "Are there any rights of way, easements, licenses, access limitations or claims that may affect your interest in the property?" and the Blue Palouse developer did not discuss the driveway easement with them directly. Plaintiffs, however, never disputed that they were aware of the easement, or provided any evidence at summary judgment to create a material fact dispute. Defendants, on the other hand, provided emails between the parties' brokers acknowledging easement work, and a letter from plaintiffs in which they acknowledged the easement—none of which was contested.